# MacDONALD, SOMMER & FRATES *v.* COUNTY OF YOLO ET AL.

No. 84–2015.   Argued March 26, 1986—Decided June 25, 1986

STEVENS, J., delivered the opinion of the Court, in which BRENNAN, MARSHALL, BLACKMUN, and O'CONNOR, JJ., joined. WHITE, J., filed a dissenting opinion, in which BURGER, C. J., joined and in Parts I, II, and III of which POWELL and REHNQUIST, JJ., joined, *post*, p. 353. REHNQUIST, J., filed a dissenting opinion in which POWELL, J., joined, *post*, p. 364.

*Howard N. Ellman* argued the cause for appellant. With him on the briefs were *Gus Bauman, Kenneth N. Burns, Scott C. Verges,* and *Edward R. MacDonald.*

*William L. Owen* argued the cause for appellees. With him on the brief were *Richard W. Sherwood, Charles R. Mack,* and *P. Lawrence Klose.**

---

*Briefs of *amici curiae* urging reversal were filed for Adirondack Park Local Government Review Board et al. by *Ronald A. Zumbrun, Robert K. Best,* and *Thomas W. Birmingham;* for the American College of Real Estate Lawyers by *Robert O. Hetlage, Eugene J. Morris, John P. Trevaskis, Jr.,* and *Edward I. Cutler;* for the California Building Industry Association by *Rex E. Lee, Benjamin W. Heineman, Jr.,* and *Carter G. Phillips;* for the First English Evangelical Lutheran Church of Glendale, Cal., et al. by *Jerrold A. Fadem* and *Michael M. Berger;* for Lodestar Co. by *Gideon Kanner;* and for the Mid-America Legal Foundation by *John M. Cannon, Susan W. Wanat,* and *Ann Plunkett Sheldon.*

Briefs of *amici curiae* urging affirmance were filed for the city of Mountain View, Cal., et al. by *Peter D. Bulens, Robert J. Logan, Carter J. Stroud, Albert E. Polonsky, R. R. Campagna, Robert J. Lanzone, Mary Jo Levinger, Steven F. Nord, K. Duane Lyders, John W. Witt, Hadden Roth,* and *Robert Rogers;* for the American Farmland Trust et al. by *Fred P. Bosselman* and *Clifford L. Weaver;* for the County Supervisors Association of California by *Mark A. Wasser;* and for the National Association of Counties et al. by *Benna Ruth Solomon* and *Joyce Holmes Benjamin.*

Briefs of *amici curiae* were filed for the United States by *Solicitor General Fried, Assistant Attorney General Habicht, Deputy Solicitor General Kuhl, Deputy Assistant Attorney General Marzulla,* and *Peter R. Steenland;* for the State of California *ex rel.* John K. Van de Kamp, Attorney General, et al. by *Mr. Van de Kamp, Richard C. Jacobs, N. Gregory Taylor,* and *Theodora Berger,* Assistant Attorneys General, and *Craig C. Thompson* and *Richard M. Frank,* Deputy Attorneys General, joined by the Attorneys General of their respective jurisdictions as follows: *Harold M. Brown* of Alaska, *Francis X. Bellotti* of Massachusetts, *LeRoy S. Zimmerman* of Pennsylvania, *Charles M. Oberly III* of Delaware, *Jim Smith* of Florida, *L. Su' esu' Lutu* of American Samoa, *Leroy Mercer* of the Virgin Islands, *Richard Opper* of Guam, *Corinne K. A. Watanabe* of Hawaii, *James T. Jones* of Idaho, *Neil F. Hartigan* of Illinois, *Linley E. Pearson* of Indiana, *Thomas J. Miller* of Iowa, *William J. Guste, Jr.,* of Louisiana, *James E. Tierney* of Maine, *Stephen H. Sachs* of Maryland, *Frank J. Kelley* of Michigan, *William L. Webster* of Missouri, *Jeffrey L. Amestoy* of Vermont, *Hubert H. Humphrey III* of Minnesota, *Robert Abrams* of New York, *T. Travis Medlock* of South Carolina, *Jim Maddox* of Texas, *David L. Wilkenson* of Utah, *Kenneth O. Eikenberry* of Washington, *Bronson C. La Follette* of Wisconsin, and *Archie G. McClintock* of Wyoming; for the National Institute of Municipal Law Officers et al. by *Roy D. Bates, Wil-*

JUSTICE STEVENS delivered the opinion of the Court.

The question presented is whether rejection of a subdivision proposal deprived appellant of its property without just compensation contrary to the Fifth and Fourteenth Amendments to the United States Constitution.[1]

I

This appeal is taken from a judgment sustaining a demurrer to a property owner's complaint for money damages for an alleged "taking" of its property. In 1975, appellant submitted a tentative subdivision map to the Yolo County Planning Commission. Under appellant's proposal, the subject property, at least part of which was planted with corn, would be subdivided into 159 single-family and multifamily residential lots.

The Yolo County Planning Commission rejected the subdivision plan, however, and the Board of Supervisors of the county affirmed that determination. The Board found numerous reasons why appellant's tentative subdivision map was neither "consistent with the General Plan of the County of Yolo, nor with the specific plan of the County of Yolo embodied in the Zoning Regulations for the County." App. 73. Appellant focuses our attention on four of those reasons. See *id.*, at 45–46 (fourth amended complaint). First, the

---

*liam I. Thornton, Jr., John W. Witt, Roger F. Cutler, George Agnost, J. Lamar Shelley, Robert J. Alfton, James K. Baker, Frank B. Gummey III, James D. Montgomery, Clifford D. Pierce, Jr., William H. Taube,* and *Charles S. Rhyne;* and for the Conservation Foundation et al. by *Charles L. Siemon, Wendy U. Larsen,* and *Christopher J. Duerksen.*

[1] The Fifth Amendment provides "nor shall private property be taken for public use, without just compensation." The Fifth Amendment prohibition applies against the States through the Fourteenth Amendment. See *Chicago, B. & Q. R. Co.* v. *Chicago,* 166 U. S. 226, 236, 239, 241 (1897). See also *Williamson Planning Comm'n* v. *Hamilton Bank,* 473 U. S. 172, 175, n. 1 (1985); *San Diego Gas & Electric Co.* v. *San Diego,* 450 U. S. 621, 623, n. 1 (1981).

Board criticized the plan because it failed to provide for access to the proposed subdivision by a public street: the city of Davis, to which the subdivision would adjoin, refused to permit the extension of Cowell Boulevard into the development. See *id.*, at 74. Even ignoring this obstacle, "[t]he map presented ma[de] no provision for any other means of access to the subdivision," and the Board calculated that relying on an extension of Cowell Boulevard alone would "constitut[e] a real and substantial danger to the public health in the event of fire, earthquake, flood, or other natural disaster." *Id.*, at 77.

Second, the Board found that appellant's "Tentative Map as presented [did] not provide for sewer service by any governmental entity":

> "The only means for provision of sewer services by the El Macero interceptor sewer require that the proposed subdivision anne[x] to the existing Community Services Area. Said annexation is subject to Local Agency Formation Commission jurisdiction. The Board finds that no proceedings currently are pending before LAFCO for the annexation of the proposed subdivision." *Id.*, at 75.

Third, the Board rejected the development plan because "[t]he level of [police] protection capable of being afforded to the proposed site by the [Yolo County] Sheriff's Department is not intense enough to meet the needs of the proposed subdivision." *Id.*, at 76. Fourth, the Board found inadequate the provision for water service for the reason that there was "no provision made in the proposed subdivision for the provision of water or maintenance of a water system for the subdivision by any governmental entity." *Ibid.*

After this rebuff, appellant filed the present action and, on the same day, a petition for a writ of mandate. The mandate action, which is still pending, seeks to set aside the Board's

decision and to direct the Board to reconsider appellant's subdivision proposal. See *id.*, at 32–33 (amended petition for writ of mandate). This action, in contrast, seeks declaratory and monetary relief. In it, appellant accuses appellees County of Yolo and city of Davis of "restricting the Property to an open-space agricultural use by denying all permit applications, subdivision maps, and other requests to implement any other use," *id.*, at 46, and thereby of appropriating the "entire economic use" of appellant's property "for the sole purpose of [providing] . . . a public, open-space buffer," *id.*, at 51. In particular, the fourth amended complaint challenges the Board's decision with respect to the adequacy of public access, sanitation services, water supplies, and fire and police protection.[2] Because appellees denied these services, according to the complaint, "none of the beneficial uses" allowed even for agricultural land would be suitable for appellant's property. *Id.*, at 52. The complaint alleged, in capital letters and "WITHOUT LIMITATION BY THE FOREGOING ENUMERATION," that "ANY APPLICATION FOR A ZONE CHANGE, VARIANCE OR OTHER RELIEF WOULD BE FUTILE." *Id.*, at 58. The complaint also alleged that appellant had "exhausted all of its administrative remedies" and that its seven causes of action were "ripe" for adjudication. *Id.*, at 58, 59.

---

[2] "25. In determining that Plaintiff's land could only be used for agricultural purposes, notwithstanding its general planning and zoning designation for residential use and its suitability therefor, County determined that (i) the Property lacked access by means of suitable public streets, a condition resulting from City's deliberate refusal to permit or approve available access; (ii) the [P]roperty lacked sanitary sewer service, a condition resulting directly from the wrongful acts of City, County and District above alleged[;] (iii) the Property lacked adequate water supply, a finding directly contrary to the fact (in evidence before County) that there are proven sources of supply on the Property and in the vicinity thereof which serve the immediately adjacent residential areas[;] and (iv) that the Property lacked adequate fire and police services, conditions attributable in part to refusal on part of County and City to provide such services." App. 51–52.

In response to these charges appellees demurred.[3]  Pointing to "its earlier Order Sustaining Demurrers and Granting Leave to Amend," the California Superior Court contended that "the property had obvious other uses than agriculture under the Yolo County Code," *id.*, at 115, and referenced sections permitting such uses, among others, as ranch and farm dwellings and agricultural storage facilities, see Yolo County Code §§ 8–2.502, 8–2.503.  The court rejected appellant's "attemp[t] to overcome that defect by alleging as conclusionary fact that each and every principal use and each and every multiple accessory use is no longer possible so that the property does have no value as zoned."  App. 115.  It concluded that, irrespective of the insufficiency of appellant's factual allegations, monetary damages for inverse condemnation are foreclosed by the California Supreme Court's decision in

---

[3] In California, "those factual allegations of the complaint which are properly pleaded are deemed admitted by defendant's demurrer." *Thompson* v. *County of Alameda*, 27 Cal. 3d 741, 746, 614 P. 2d 728, 730 (1980).  "However," a demurrer "does not admit contentions, deductions or conclusions of fact or law alleged therein." *Daar* v. *Yellow Cab Co.*, 67 Cal. 2d 695, 713, 433 P. 2d 732, 745 (1967) (citations omitted).  See, *e. g.*, *Serrano* v. *Priest*, 5 Cal. 3d 584, 591, 487 P. 2d 1241, 1245 (1971); *Chicago Title Ins. Co.* v. *Great Western Financial Corp.*, 69 Cal. 2d 305, 327, 444 P. 2d 481, 495 (1968); *Sych* v. *Insurance Co. of North America*, 173 Cal. App. 3d 321, 326, 220 Cal. Rptr. 692, 695 (1985); *Read* v. *City of Lynwood*, 173 Cal. App. 3d 437, 442, 219 Cal. Rptr. 26, 28 (1985).  Thus, one intermediate California appellate court has sustained a demurrer to a complaint alleging a regulatory taking on jurisdictional grounds, notwithstanding an "allegation in [appellants'] complaint that they 'have exhausted their administrative remedies'"; for "while a demurrer admits all material facts which are properly pleaded, it does not admit conclusions of fact or law alleged therein.  Appellants' conclusionary statement that they exhausted their administrative remedies therefore cannot avail them." *Pan Pacific Properties, Inc.* v. *County of Santa Cruz*, 81 Cal. App. 3d 244, 251, 146 Cal. Rptr. 428, 432 (1978) (citation omitted).  Cf. *Hecton* v. *People ex rel. Dept. of Transportation*, 58 Cal. App. 3d 653, 657, 130 Cal. Rptr. 230, 232 (1976) (same; allegations of taking and damage).

*Agins* v. *City of Tiburon*, 24 Cal. 3d 266, 274–277, 598 P. 2d 25, 29–31 (1979), aff'd, 447 U. S. 255 (1980). App. 116, 118.[4]

The California Court of Appeal affirmed. It "accept[ed] as true all the properly pled factual allegations of the complaint," *id.*, at 126, and did "not consider whether the complaint was barred by the failure to exhaust administrative remedies or by res judicata," *id.*, at 125–126. But it "f[ou]nd the decision in *Agins* to be controlling herein," *id.*, at 130:

> "In that case the [California] Supreme Court specifically and clearly established, for policy reasons, a rule of law which precludes a landowner from recovering in inverse condemnation based upon land use regulation. We emphasize that the Court did not hold that regulation cannot amount to a taking without compensation, it simply held that in such event the remedy is not inverse condemnation. The remedy instead is an action to have the regulation set aside as unconstitutional. Plaintiff has filed a mandate action in the trial court which is currently pending. That is its proper remedy. The claim for inverse condemnation cannot be maintained." *Id.*, at 130–131 (citation and footnote omitted).

In the alternative, the California Court of Appeal determined that appellant would not be entitled to monetary relief even if California law provided for this remedy:

> "In any event, even if an inverse condemnation action were available in a land use regulation situation, we would be constrained to hold that plaintiff has failed to

---

[4] We understand the Superior Court to have sustained the demurrer both because the complaint failed properly to plead facts amounting to a taking and because California law does not provide a monetary remedy for a regulatory taking. The Superior Court, after explaining these two reasons, concluded simply that "[t]he complaint fails to state a proper cause of action for inverse condemnation." App. 116. Although JUSTICE WHITE's dissent treats the first reason as dicta and the second as the actual basis of decision, see *post*, at 355–356, since the Superior Court did not rest its holding on only one of its two stated reasons, it is appropriate to treat them as alternative bases of decision.

state a cause of action. Pared to their essence, the allegations are that plaintiff purchased property for residential development, the property is zoned for residential development, plaintiff submitted an application for approval of development of the property into 159 residential units, and, in part at the urging of the City, the County denied approval of the application. In these allegations plaintiff is not unlike the plaintiffs in *Agins* . . . [a case in which] both the California Supreme Court and the United States Supreme Court held that the plaintiffs had failed to allege facts which would establish an unconstitutional taking of private property.

"The plaintiff's claim here must fail for the same reasons the claims in *Agins* failed. Here plaintiff applied for approval of a particular and relatively intensive residential development and the application was denied. The denial of that particular plan cannot be equated with a refusal to permit any development, and plaintiff concedes that the property is zoned for residential purposes in the County general plan and zoning ordinance. Land use planning is not an all-or-nothing proposition. A governmental entity is not required to permit a landowner to develop property to [the] full extent he might desire or be charged with an unconstitutional taking of the property. Here, as in *Agins*, the refusal of the defendants to permit the intensive development desired by the landowner does not preclude less intensive, but still valuable development. Accordingly, the complaint fails to state a cause of action." *Id.*, at 132–133 (citation omitted).[5]

---

[5] In answer to appellant's 42 U. S. C. § 1983 claim, the California Court of Appeal similarly held that a monetary judgment was foreclosed by *Agins*, and that "[e]ven if a cause of action for monetary damages could be stated under the Civil Rights Act based upon the regulation of the use of property, the allegations would be insufficient in this case:

"Plaintiff seeks compensation because the County refused approval of the intensive development it desires, but that refusal does not mean that other, less intensive uses would also be denied. Accordingly plaintiff has

The California Supreme Court denied appellant's petition for hearing, and appellant perfected an appeal to this Court. Because of the importance of the question whether a monetary remedy in inverse condemnation is constitutionally required in appropriate cases involving regulatory takings, we noted probable jurisdiction. 474 U. S. 917 (1985). On further consideration of our jurisdiction to hear this appeal, aided by briefing and oral argument, we find ourselves unable to address the merits of this question.

## II

The regulatory takings claim advanced by appellant has two components. First, appellant must establish that the regulation has in substance "taken" his property[6]—that is, that the regulation "goes too far." *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393, 415 (1922). See *Kaiser Aetna* v. *United States,* 444 U. S. 164, 178 (1979). Second, appellant must demonstrate that any proffered compensation is not "just."

It follows from the nature of a regulatory takings claim that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property. A court cannot determine whether a regulation has gone "too far" unless it knows how far the regulation goes. As Justice Holmes emphasized throughout his opinion for the Court in *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S., at 416, "this is a question of degree—and therefore cannot be disposed of by general propositions." Accord, *id.,* at 413. To this day we have no "set formula to determine where regulation ends and taking begins." *Goldblatt* v. *Hempstead,* 369 U. S. 590, 594

---

not alleged facts sufficient to establish an uncompensated taking of its property." App. 135.

[6] We accept for the purposes of deciding this case that any taking was for a public purpose, as alleged in the complaint. See *id.,* at 50. See also *id.,* at 51, 60.

(1962). Instead, we rely "as much [on] the exercise of judgment as [on] the application of logic." *Andrus* v. *Allard*, 444 U. S. 51, 65 (1979). Our cases have accordingly "examined the 'taking' question by engaging in essentially ad hoc, factual inquiries that have identified several factors—such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the governmental action—that have particular significance." *Kaiser Aetna* v. *United States*, 444 U. S., at 175. See *Penn Central Transportation Co.* v. *New York City*, 438 U. S. 104, 124 (1978) ("ad hoc, factual inquiries"); *United States* v. *Central Eureka Mining Co.*, 357 U. S. 155, 168 (1958) ("question properly turning upon the particular circumstances of each case"). Until a property owner has "obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property," "it is impossible to tell whether the land retain[s] any reasonable beneficial use or whether [existing] expectation interests ha[ve] been destroyed." *Williamson Planning Comm'n* v. *Hamilton Bank*, 473 U. S. 172, 186, 190, n. 11 (1985). As we explained last Term:

> "[T]he difficult problem [is] how to define "too far," that is, how to distinguish the point at which regulation becomes so onerous that it has the same effect as an appropriation of the property through eminent domain or physical possession. . . . [R]esolution of that question depends, in significant part, upon an analysis of the effect the Commission's application of the zoning ordinance and subdivision regulations had on the value of respondent's property and investment-backed profit expectation. That effect cannot be measured until a final decision is made as to how the regulations will be applied to respondent's property." *Id.*, at 199–200 (footnote omitted).

Accord, *id.*, at 191.

For similar reasons, a court cannot determine whether a municipality has failed to provide "just compensation" until it knows what, if any, compensation the responsible administrative body intends to provide. See *id.*, at 195 ("[T]he State's action here is not 'complete' until the State fails to provide adequate compensation for the taking" (footnote omitted)). The local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other. In *Penn Central Transportation Co. v. New York City*, for example, we recognized that the Landmarks Preservation Commission, the administrative body primarily responsible for administering New York City's Landmarks Preservation Law, had authority in appropriate circumstances to authorize alterations, remit taxes, and transfer development rights to ensure the landmark owner a reasonable return on its property. See 438 U. S., at 112–115, and n. 13. Because the railroad had "not sought approval for the construction of a smaller structure" than its proposed 50-plus story office building, *id.*, at 137; see *id.*, at 137, n. 34, and because its development rights in the airspace above its Grand Central Station Terminal were transferable "to at least eight parcels in the vicinity of the Terminal, one or two of which ha[d] been found suitable for the construction of a new office building," *id.*, at 137, we concluded that "the application of New York City's Landmarks Law ha[d] not effected a 'taking' of [the railroad's] property," *id.*, at 138. Whether the inquiry asks if a regulation has "gone too far," or whether it seeks to determine if proffered compensation is "just," no answer is possible until a court knows what use, if any, may be made of the affected property.[7]

---

[7] A property owner is of course not required to resort to piecemeal litigation or otherwise unfair procedures in order to obtain this determination. See *Williamson Planning Comm'n v. Hamilton Bank*, 473 U. S., at 205–206 (STEVENS, J., concurring in judgment); *United States v. Dickinson*, 331 U. S. 745, 749 (1947).

Our cases uniformly reflect an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it. Thus, in *Agins* v. *Tiburon*, 447 U. S. 255 (1980), we held that zoning ordinances which authorized the development of between one and five single-family residences on appellants' 5-acre tract did not effect a taking of their property on their face, and, because appellants had not made application for any improvements to their property, the constitutionality of any particular application of the ordinances was not properly before us. See *id.*, at 260. Similarly, in *San Diego Gas & Electric Co.* v. *San Diego*, 450 U. S. 621 (1981), we dismissed the appeal because it did not appear that the city's rezoning and adoption of an open space plan had deprived the utility of all beneficial use of its property. See *id.*, at 631–632, and n. 12. Because the California Court of Appeal had "not decided whether any taking in fact ha[d] occurred, . . . further proceedings [were] necessary to resolve the federal question whether there has been a taking at all." *Id.*, at 633. As a consequence, the judgment was not final for purposes of our jurisdiction under 28 U. S. C. § 1257. *Ibid.* Most recently, in *Williamson Planning Comm'n* v. *Hamilton Bank*, we held that the developer's failure either to seek variances that would have allowed it to develop the property in accordance with its proposed plat, or to avail itself of an available and facially adequate state procedure by which it might obtain "just compensation," meant that its regulatory taking claim was premature.

Here, in comparison to the situations of the property owners in the three preceding cases, appellant has submitted one subdivision proposal and has received the Board's response thereto. Nevertheless, appellant still has yet to receive the Board's "final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson Planning Comm'n* v. *Hamilton Bank*, 473 U. S., at 191. In *Agins*, *San Diego Gas & Electric*, and *William-*

*son Planning Comm'n*, we declined to reach the question whether the Constitution requires a monetary remedy to redress some regulatory takings because the records in those cases left us uncertain whether the property at issue had in fact been taken. Likewise, in this case, the holdings of both courts below leave open the possibility that some development will be permitted,[8] and thus again leave us in doubt re-

---

[8] Appellant's current complaint—as authoritatively construed by the California Court of Appeal—alleged the denial of only one intense type of residential development. Appellant does not contend that only improvements along the lines of its 159-home subdivision plan would avert a regulatory taking. Rather, the complaint alleged that appellant was deprived of all beneficial use of its property. See App. 51, 60, 65. The California Court of Appeal, whose opinion on matters of local law and local pleading we must respect, cf. *Agins* v. *Tiburon*, 447 U. S. 255, 259–260, n. 5 (1980), apparently rejected what the Superior Court labeled a "conclusionary" allegation of futility, and explained that appellant could seek an administrative application of the Yolo County General Plan and Zoning Ordinances to its property which, for aught that appears, would allow development to proceed.

JUSTICE WHITE's dissent reluctantly concludes that our understanding of the Court of Appeal's decision is "plausible" and "sensible," but insists that the Court of Appeal's decision is "most properly read as taking as true all of the allegations in the complaint, including the allegations of futility, and as rejecting those allegations as insufficient as a matter of substantive takings law." *Post*, at 363. We disagree. Both state courts upheld appellees' demurrer on the ground that not all development had been foreclosed. Thus, the Superior Court apparently accepted appellant's submission that its property was restricted to agricultural use but held that, even so, valuable use might still be made of the land. The Court of Appeal was unwilling to concede even this much: it noted that appellant's property was zoned residential and held that valuable residential development was open to it. These holdings that there is no total prohibition against the productive use of appellant's land cannot possibly be reconciled with the allegations in the complaint that "any beneficial use" is precluded, App. 46, and that future applications would be futile, *id.*, at 58. In view of the fact that these allegations were necessarily rejected by the state courts, and that the parties' briefs disclose a permissible basis for this disposition in settled California demurrer law, see n. 3, *supra;* see also Brief for Respondents in 3 Civil 22306 (Cal. Ct. App., Third App. Dist., July 10, 1984), pp. 25, 27; Memorandum of Points and Authorities in Support of Demurrer to Fourth Amended Complaint in No. 36655 (Cal. Super. Ct., Yolo County, Dec. 18,

garding the antecedent question whether appellant's property has been taken.[9]   The judgment is therefore

*Affirmed.*

JUSTICE WHITE, with whom THE CHIEF JUSTICE joins and with whom JUSTICE POWELL and JUSTICE REHNQUIST join as to Parts I, II, and III, dissenting.

The Court acknowledges that we noted probable jurisdiction in this case "[b]ecause of the importance of the ques-

---

1981), 4 Clerk's Tr., pp. 888–889, 912, n. 2, 914, it does not matter that the state courts neglected to "expressly disapprove" the deficient allegations or to detail the particular reasons why, see *post*, at 357.

Remarkably, the dissent implies that the Court of Appeal *accepted* the complaint's allegations that local regulations denied appellant all beneficial use of its property and that further regulatory proceedings would be fruitless, but nonetheless required it to file further "useless" applications to state a taking claim. *Ibid.* Whatever purpose such a requirement might serve, futile reapplications are not contemplated by the Court of Appeal. To begin with, this requirement is not, as the dissent maintains, suggested by the Court of Appeal's reliance on the decisions of the California Supreme Court and of this Court in *Agins*. See App. 132. To the contrary, the Court of Appeal relied on the decisions in *Agins* to illustrate that the property owners there—as here—had not "attempt[ed] to obtain approval to . . . develop the land" in accordance with applicable zoning regulations and for this reason had "failed to allege facts which would establish an unconstitutional taking of private property." *Id.*, at 132–133.   See 447 U. S., at 259–263; 24 Cal. 3d 266, 277, 598 P. 2d 25, 31 (1979).   The implication is not that future applications would be futile, but that a meaningful application has not yet been made.   The dissent's supposition that the Court of Appeal accepted the allegations of taking and futility is further contradicted by the court's express denial that submission of a less intensive application would be futile: "the refusal of the [appellees] to permit the intensive development desired by the landowner does not preclude less intensive, but still valuable development." App. 133.

[9] Appellant is thus in the same position Mr. and Mrs. Agins would have occupied if they had requested and been denied the opportunity to build five Victorian mansions for their single-family residences, or if San Diego Gas & Electric Co. had asked and been denied the option of building a nuclear powerplant.   Rejection of exceedingly grandiose development plans does not logically imply that less ambitious plans will receive similarly unfavorable reviews.   In this case, of course, we have statements from both courts below dispelling any doubt on this point.

tion whether a monetary remedy in inverse condemnation is constitutionally required in appropriate cases involving regulatory takings," *ante*, at 348, but avoids this issue by holding that the antecedent question—whether appellant adequately stated a takings claim—should be answered in the negative. I disagree. The factual allegations that we must consider, when the opinion below is correctly read, do state a takings claim and therefore present the remedial question that we have thrice before sought to resolve. See *Williamson County Regional Planning Comm'n* v. *Hamilton Bank*, 473 U. S. 172 (1985); *San Diego Gas & Electric Co.* v. *San Diego*, 450 U. S. 621 (1981); *Agins* v. *Tiburon*, 447 U. S. 255 (1980).

I

The Court recognizes that "the complaint alleged that appellant was deprived of all beneficial use of its property," *ante*, at 352, n. 8, but concludes:

"The California Court of Appeal, whose opinion on matters of local law and local pleading we must respect, cf. *Agins* v. *Tiburon*, 447 U. S. 255, 259–260, n. 5 (1980), apparently rejected what the Superior Court labeled a 'conclusionary' allegation of futility, and explained that appellant could seek an administrative application of the Yolo County General Plan and Zoning Ordinances to its property which, for aught that appears, would allow development to proceed." *Ibid.*

The Court thus ignores the allegations in the complaint that the effect of the county's denial of appellant's subdivision application in conjunction with the reasons behind that denial and other actions taken by the appellees has been to deprive the appellant of any use of its property "which is not (a) economically infeasible, (b) prohibited by law, or (c) prevented by actions taken by [the appellees]." Fourth Amended Complaint, App. 46. The Court also disregards appellant's allegation that the actions of the appellees demonstrate "THAT ANY APPLICATION FOR A ZONE CHANGE, VARIANCE OR OTHER

RELIEF WOULD BE FUTILE." *Id.*, at 58. Instead, the Court focuses on the denial of the particular subdivision application alone.

In my view, the Court does not fairly read the record and the opinion below. Appellant's initial complaint filed in Superior Court alleged that although the property was zoned for residential use by the county it was designated an "Agricultural Preserve or Reserve" by the city. The complaint further alleged that even though the property lay in the county outside of the city's boundaries, the county implemented city policy relegating the land to agricultural uses. See Complaint of Oct. 13, 1977, pp. 9–12. Finally, the complaint asserted that the property was agriculturally impaired and could not economically be used for agricultural purposes. See *id.*, at 5, 16.

In sustaining the appellees' demurrer to this complaint, the Superior Court accepted as true the allegation that the property had effectively been rezoned agricultural but noted that there was no allegation that the property could not be used for a variety of nonagricultural purposes explicitly allowed in agricultural zones under the county and city codes. See Order of Mar. 30, 1978, in No. 36655 (Cal. Super. Ct., Yolo County), pp. 6–8. The conclusion was that "[t]he failure to allege the property in question useless for other permitted purposes in an agricultural zone over and above an agricultural use renders the [inverse condemnation cause of action] demurrable." *Id.*, at 8.

In the Fourth Amended Complaint, the complaint that formed the basis for the judgment below, appellant responded to this earlier ruling by specifically alleging that the property was not suitable for the other uses permitted in an agricultural zone and by asserting facts in support of this allegation. See App. 52–58. The Superior Court, however, indicated that it found these allegations "conclusionary," although it did not rely on this determination in sustaining the demurrer to the complaint, relying instead on the California Supreme Court's general ruling in *Agins* v. *City of Tiburon,*

24 Cal. 3d 266, 272–277, 598 P. 2d 25, 28–31 (1979), aff'd on other grounds, 447 U. S. 255 (1980), that no inverse condemnation action may be brought as a result of a land use regulation.[1] The crucial fact here is that the Superior Court denominated "conclusionary" only those allegations in the complaint that rejected the possibility of feasible nonagricultural uses of the property that would be consistent with agricultural zoning. It did not categorize as "conclusionary" appellant's allegations that all economically beneficial residential uses were foreclosed by the appellees' actions.

In reviewing the Superior Court's ruling on the demurrer to the Fourth Amended Complaint, the California Court of Appeal first noted that it would not consider whether the complaint was barred by the failure to exhaust administrative remedies or by res judicata. App. 125–126. It then summarized the allegations of the complaint, including the allegations that the property was not suitable for agricultural use or any of the other uses permitted in the county code and that it was suitable for residential use but that the county and city had acted to prevent this use entirely. *Id.*, at 127–129. The Court of Appeal also noted that appellant had alleged that "[a]ny application for a zone change, variance or other relief would be futile." *Id.*, at 129. Nowhere did the court state that as a matter of California demurrer law it was rejecting any of these allegations as not properly pleaded. And nowhere did it refer to the Superior Court's statement that the allegations as to the infeasibility of the nonagricultural uses that would be consistent with agricultural zoning might not be properly pleaded.

---

[1] The Superior Court also sustained the demurrer on the ground that appellant had failed to exhaust administrative and judicial remedies; that the county's denial of appellant's subdivision application was res judicata not subject to collateral attack in the Superior Court; and that no taking in the form of actual "invasion or appropriation of a cognizably valuable property right" had been alleged. App. 111, 116.

Having recited all of these allegations without indicating that it was rejecting any of them, the Court of Appeal first held that no cause of action was stated in inverse condemnation. This holding, it noted, was compelled by the California Supreme Court's ruling in *Agins* that there is no such remedy for takings alleged to result from land use regulation. *Id.*, at 130–132. See *Agins*, 24 Cal. 3d, at 272–277, 598 P. 2d, at 28–31.

In the alternative, however, the Court of Appeal found that even if such a cause of action were available, appellant had not stated a takings claim. The court concluded that "[p]ared to their essence, the allegations are that [appellant] purchased property for residential development, the property is zoned for residential development, [appellant] submitted an application for approval of development of the property into 159 residential units, and, in part at the urging of the City, the County denied approval of the application." App. 132. The court then observed that this situation was "not unlike" that in *Agins*, in which a zoning ordinance that restricted a landowner of five acres to building a maximum of five residences on his property was found not to constitute a taking since on its face the ordinance still allowed that level of development, which was a reasonable use of the property. See *Agins*, 447 U. S., at 262–263; *Agins*, 24 Cal. 3d, at 277, 598 P. 2d, at 31. Citing *Agins*, the Court of Appeal than determined that appellant had not stated a takings cause of action because appellees' refusal to allow the intensive development requested by appellant "does not preclude less intensive, but still valuable development." App. 133.

In my view, given the absence of any expression of disapproval by the Court of Appeal of any of the appellant's allegations summarized in its opinion and given the fact that the Superior Court had not labeled appellant's allegations of futility "conclusionary," there is no reason to read into this last statement by the Court of Appeal a state-law ruling that the allegations of futility were not well pleaded. Instead, the

Court of Appeal's focus on what it termed the essence of appellant's complaint together with its conclusion that with respect to these essential allegations this case was analytically the same as *Agins* imply that it believed that *as a matter of federal takings law* certain allegations controlled in terms of determining if a takings claim had been stated. Specifically, in concluding that the allegations of futility were not material and in determining that under *Agins* further application must be made before a takings claim could be stated, the Court of Appeal held that no takings cause of action had been stated because no reapplication had been made, even if further application would be useless.

## II

Whether a regulatory taking has occurred is an inquiry that cannot be completed until a final decision is made as to how the allegedly confiscatory regulations apply to the pertinent property. *Williamson County Regional Planning Comm'n,* 473 U. S., at 190–191. Thus, in *Penn Central Transportation Co.* v. *New York City,* 438 U. S. 104, 136–137 (1978), and in *Agins, supra,* at 262–263, we considered for takings purposes only the actual regulatory decision that had been made by the governmental decisionmaker; we declined to speculate as to further restrictions that might be imposed. In *Hodel* v. *Virginia Surface Mining & Reclamation Assn., Inc.,* 452 U. S. 264, 293–297 (1981), we refused to consider a takings claim based on general regulatory provisions that had not yet been applied to specific properties and that were susceptible of administrative exemption. Most recently, in *Williamson County Regional Planning Comm'n,* the Court determined that the denial of a particular use for a property did not constitute a final decision where variance procedures were available that "[left] open the possibility that [the landowner] may develop the subdivision according to its plat after obtaining the variances." 473 U. S., at 193–194.

These holdings recognize that a regulatory takings determination is closely tied to the facts of a particular case and that there is often an ongoing process by which the relevant regulatory decisions are made. Given these characteristics of a regulatory taking, the final decision requirement is necessary to ensure that "the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Id.*, at 193. Nothing in our cases, however, suggests that the decisionmaker's definitive position may be determined only from explicit denials of property-owner applications for development. Nor do these cases suggest that repeated applications and denials are necessary to pinpoint that position.

Moreover, I see no reason for importing such a requirement into the "final decision" analysis. A decisionmaker's definitive position may sometimes be determined by factors other than its actual decision on the issue in question. For example, if a landowner applies to develop its land in a relatively intensive manner that is consistent with the applicable zoning requirements and if the governmental body denies that application, explaining that all development will be barred under its interpretation of the zoning ordinance, I would find that a final decision barring all development has been made—even though the landowner did not apply for a less intensive development. Although a landowner must pursue reasonably available avenues that might allow relief, it need not, I believe, take patently fruitless measures.

The Court of Appeal's reliance on *Agins* in this case was therefore misplaced. Appellant alleged not simply that its application had been denied but that the overall effect of (1) that denial, (2) the reasons given for the denial, and (3) other actions taken by appellees to prevent appellant from ever being able to meet county development requirements was that appellant's property had been taken. When the Court of Appeal purported to reduce appellant's claim to its essence, it ignored a critical distinction between *Agins*, in

which there was no indication that upon application the property owner would not be allowed to develop his property in some economically beneficial manner, and the factual situation here, in which further application would allegedly be futile. In this case, I believe that appellant sufficiently alleged a final decision denying it all reasonable economically beneficial use of its property.[2]

## III

Assuming that appellant adequately alleged a final decision, the next question is whether a takings cause of action was stated by the allegations in the complaint. Discerning the answer to this question involves two separate inquiries: Whether a land use regulation restricting the use of property may ever amount to a taking and, if the answer to this first inquiry is affirmative, whether the allegations here are sufficient to state a takings claim.

As to the first question, our cases have long indicated that police-power regulations may rise to the level of a taking if the restrictions they impose are sufficiently severe. See, e. g., *Agins*, 447 U. S., at 260; *PruneYard Shopping Center* v. *Robins*, 447 U. S. 74, 83 (1980); *Kaiser Aetna* v. *United States*, 444 U. S. 164, 174–175 (1979); *Andrus* v. *Allard*, 444 U. S. 51, 65–66 (1979); *Penn Central, supra*, at 130–131, 138, n. 36; *United States* v. *Central Eureka Mining Co.*, 357 U. S. 155, 168 (1958); *Pennsylvania Coal Co.* v. *Mahon*, 260 U. S. 393, 415–416 (1922). Nevertheless, the California Supreme Court in *Agins* concluded:

"[A] landowner alleging that a zoning ordinance has deprived him of substantially all use of his land may attempt through declaratory relief or mandamus to invalidate the ordinance as excessive regulation in violation of the Fifth Amendment to the United States Constitu-

---

[2] I emphasize that the futility of further application would have to be proved at trial for appellant to prevail here on the merits. I address only the question whether appellant's allegations of futility are sufficient support for assuming that a final decision has been made.

tion. . . . He may not, however, elect to sue in inverse condemnation and thereby transmute an excessive use of the police power into a lawful taking for which compensation in eminent domain must be paid." 24 Cal. 3d, at 273, 598 P. 2d, at 28.[3]

In addition to being inconsistent with this Court's statements, this view, as JUSTICE BRENNAN explained in his dissent in *San Diego Gas*, ignores the fact that

"[p]olice power regulations such as zoning ordinances and other land-use restrictions can destroy the use and enjoyment of property in order to promote the public good just as effectively as formal condemnation or physical invasion of property. From the property owner's point of view, it may matter little whether his land is condemned or flooded, or whether it is restricted by regulation to use in its natural state, if the effect in both cases is to deprive him of all beneficial use of it. From the government's point of view, the benefits flowing to the public from preservation of open space through regulation may be equally great as from creating a wildlife refuge through formal condemnation or increasing electricity production through a dam project that floods private property. . . . It is only logical, then, that government action other than acquisition of title, occupancy, or physical invasion can be a 'taking,' and therefore a *de facto* exercise of the power of eminent domain, where the effects completely deprive the owner of all or most

---

[3] Although the California Supreme Court's ruling in *Agins* rests on the rationale that excessive land use regulation simply cannot constitute a lawful taking, the Court of Appeal in this case seemed to proceed on the assumption that such regulation could constitute a taking but that no inverse condemnation remedy for such a taking would be available. See App. 131. My discussion here follows the reasoning given by the California Supreme Court in *Agins* rather than the somewhat inexact summary of that reasoning given by the Court of Appeal below.

of his interest in the property." 450 U. S., at 652–653 (citations and footnotes omitted).

I agree that land use restrictions may constitute a taking under the Constitution.

This resolution of the general question brings me to the more specific question whether the allegations in the complaint here were sufficient to state a takings claim. Here, appellant alleged the existence of a final decision denying it all economically beneficial use of its property. It also alleged that it had paid "good and valuable consideration," App. 43, for the property. Factual allegations of interference with reasonable investment-backed expectations and denial of all economically feasible use of the property are certainly sufficient allegations of a regulatory taking to state a cause of action. See, *e. g., Penn Central,* 438 U. S., at 136–138. Consequently, I would hold that appellant adequately alleged a taking.

IV

The final question presented is whether a State can limit to declaratory and injunctive relief the remedies available to a person whose property has been taken by regulation or whether the State must pay compensation for the interim period between the time that the government first "took" the property and the time that the "taking" is rescinded by amendment of the regulation.[4] On this question, I am again in substantial agreement with JUSTICE BRENNAN's discussion in *San Diego Gas.* See 450 U. S., at 653–660. Even where a property owner is deprived of its property only temporarily, if that deprivation amounts to a taking the Constitu-

---

[4] I assume here that the normal action by the governmental entity following a determination that a particular regulation constitutes a taking will be to rescind the regulation. I believe that this is a permissible course of action, limiting liability for the taking to the interim period. See *San Diego Gas & Electric Co.* v. *San Diego,* 450 U. S. 621, 658 (1981) (BRENNAN, J., dissenting). Of course, the governmental entity could actually condemn the property and pay permanent compensation for it.

tion requires that just compensation be paid. If the governmental body that has taken the property decides to rescind the taking by amending the regulation, that does not reverse the fact that the property owner has been deprived of its property in the interim. "[I]t is only fair that the public bear the cost of benefits received during the interim period between application of the regulation and the government entity's rescission of it." *Id.*, at 656–657. Thus, just compensation must be available for the period between the time of the final decision taking the property and the time that that decision is rescinded.

I recognize that such a constitutional rule admits of problems of administration that are by no means insignificant. Aside from the problems that the Court has already addressed in some measure regarding the determination of when a taking shall be deemed to have occurred, there are questions of valuation and of procedure. As to the latter, the Constitution requires no particular procedures, although as the Court today notes, "[a] property owner is of course not required to resort to piecemeal litigation or otherwise unfair procedures in order to obtain this determination." *Ante*, at 350, n. 7. As to the former, the issue of what constitutes just compensation in this context is a particularly meaty one, which merits substantial reflection and analysis. Nevertheless, these unsettled questions should not deter us from acting to protect constitutional requirements in this type of case. Consequently, I would vacate the judgment below and remand for further proceedings not inconsistent with the views I have expressed.

## V

In sum, I believe that the Court of Appeal's decision is most properly read as taking as true all of the allegations in the complaint, including the allegations of futility, and as rejecting those allegations as insufficient as a matter of substantive takings law. At the very least, the Court's reading of the opinion below, however plausible, is not the only sen-

sible reading of that opinion. Given this arguable ambiguity, I would not, as the Court does, withdraw from appellant all chance of relief at this stage. That is, if the Court of Appeal in fact did reach its judgment by the reasoning I have summarized rather than as the Court hypothesizes, appellant should not be precluded from seeking relief on the facts currently alleged in the complaint. I would at least vacate the judgment below and remand for explanation by the Court of Appeal as to the precise basis for its judgment.

JUSTICE REHNQUIST, with whom JUSTICE POWELL joins, dissenting.

I agree with JUSTICE WHITE that the Court of Appeal's opinion is best read as rejecting appellant's allegations as a matter of substantive takings law; that appellant sufficiently alleged a final decision denying it all beneficial use of its property; that a land use regulation restricting the use of property may amount to a taking; and that the allegations here are sufficient to state a takings claim. Accordingly, I join Parts I, II, and III of his dissenting opinion. As JUSTICE WHITE recognizes in Part IV of his opinion, the questions surrounding what compensation, if any, is due a property owner in the context of "interim" takings are multifaceted and difficult. I would not reach these questions without first permitting the courts below to address them in light of the fact that appellant has sufficiently alleged a taking.