LAURJO CONSTRUCTION CO., PLAINTIFF–RESPONDENT, v.
STATE OF NEW JERSEY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted on October 24, 1988—Decided November 17, 1988.

Before Judges SHEBELL and LANDAU.

*W. Cary Edwards,* Attorney General, attorney for appellant (*Michael R. Clancy,* Deputy Attorney General, of counsel; *George P. Cook,* Deputy Attorney General, on the brief).

*Jacobs, Bell & Baumol,* attorneys for respondent (*Raphael G. Jacobs* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

The State of New Jersey appealed from a judgment of the Law Division, Bergen County which directed it to institute condemnation proceedings against the property owned by plaintiff-respondent Laurjo Construction Co. Laurjo sued the State on an inverse condemnation theory two years after denial of its 1984 application to the New Jersey Department of Environmental Protection (DEP) for a stream encroachment permit to permit construction of a one-family house. The application was made under the Flood Hazard Area Control Regulation, *N.J.A. C.* 7:13–1.1 *et seq.*

Laurjo's complaint in the present matter contended that DEP's regulations which required such permit and the denial thereof deprived it of all reasonable use of its property without just compensation in violation of the State and Federal Constitutions.

Although the regulations permit application for a hardship waiver and for opportunity to agree to alternative requirements which protect the public health, safety and welfare, Laurjo elected not to apply for waiver or modification, or to follow up on an October 18, 1984 invitation by DEP to work further with them on efforts to approve its request.

The State contended at trial, as it does here, that Laurjo is barred from initiating this action by reason of failure to exhaust administrative remedies. *R.* 4:69–5. Laurjo says that it does not dispute that the DEP can exercise the State's police powers through Flood Hazard Area Control Regulations in the

manner employed. Rather it contends that, as applied to its property, such regulations constitute a compensable taking.

In *Usdin v. Environmental Protection Dept. of N.J.*, 173 *N.J.Super.* 311 (Law Div.1980), aff'd 179 *N.J.Super.* 113 (App. Div.1981), it was held that temporary designation of certain land as a "floodway," thereby precluding development, was not a "taking" when the purpose of the restriction was primarily to prevent an abuse, or a danger to life and property. *Usdin*, 173 *N.J.Super.* at 331; *Usdin*, 179 *N.J.Super.* at 115. "[N]either property rights nor contract rights are absolute; for Government cannot exist if the citizen may at will use his property to the detriment of his fellows...." *Nebbia v. New York*, 291 *U.S.* 502, 523, 54 *S.Ct.* 505, 510, 78 *L.Ed.* 940, 949 (1933).

The trial judge in the present case reasoned:

> This case presents the question of whether a landowner who claims that he has lost all beneficial use of his land because it was 'taken' by State land use regulations—which prohibit the use for which the landowner purchased the land and for which the property is zoned by local officials—is entitled to just compensation (money damages) from the State. This court determines, consistent with the recent U.S. Supreme Court decision in *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California* [482 *U.S* 304, 107 *S.Ct.* 2378, 96 *L.Ed.*2d 250] 55 U.S.L.W. 4781 (June 9, 1987), that the instant facts present an instance of a temporary regulatory taking of private property for which the *U.S. Const.*, Amend. V, made applicable to the states through Amend. XIV, and *N.J. Const.* (1947), Art. I, par. 20, requires just compensation to the plaintiff.
>
> · · · · · · · ·
>
> In so concluding, this Court does not take issue with the constitutionality or propriety of the subject regulations, nor has plaintiff raised this issue in its complaint. The Appellate Division in *Usdin v. Environmental Protection Dep't.* has already concluded that the State's enactment of flood control legislation was a proper exercise of the police power to further the public health and safety. 173 *N.J.Super.* 311 (Law Div.1980), aff'd 179 *N.J.Super.* 113 (App.Div.1981). After *Lutheran Evangelical*, when confronted with otherwise proper governmental interferences with property rights of the type that this Court is faced with here, the focus is on the constitutional remedy for such temporary deprivations of use. Contrary to the conclusion of the trial court in *Usdin*, 173 *N.J.Super.* at 329–330 that '(g)overnment must have the unfettered ability to protect the general welfare of its citizens without subjecting them to bearing the cost ...', *Lutheran Evangelical*, which also dealt with legislation enacted for the public health and safety, holds that government's duty under the Fifth Amendment is to provide just compensation for the exercise of its powers.

Accordingly, judgment was rendered directing the State to commence condemnation proceedings.

We disagree and reverse.

Both the majority and minority opinions in *First Lutheran* made it clear that the opinion did not undertake to decide either whether the flood ordinance there under consideration deprived appellant of all reasonable use of its property or whether there was a compensable taking inasmuch as the ordinance was enacted for public safety purposes. The majority in *First Lutheran* said "[w]e accordingly have no occasion to decide whether the ordinance at issue actually denied appellant all use of its property or whether the county might avoid the conclusion that a compensable taking had occurred by establishing that the denial of all use was insulated [sic] as a part of the State's authority to enact safety regulations." *First Lutheran Church of Glendale v. Los Angeles County,* 482 U.S. 304, ——, 107 *S.Ct.* 2378, 2384–2385, 96 *L.Ed.*2d 250, 262 (1987) (footnote omitted). As the minority opinion authored by Justice Stevens stated, "it is imperative to stress that the Court does not hold that appellant is entitled to compensation as a result of the flood protection regulation that the County enacted.... [T]his Court's precedents demonstrate that the type of regulatory program at issue here cannot constitute a taking." *Id.* at ——, 107 *S.Ct.* at 2391, 96 *L.Ed.*2d at 270 (Stevens, J., dissenting). *See also Keystone Bituminous Coal Assoc. v. DeBenedictis,* 480 *U.S.* 470, 107 *S.Ct.* 1232, 94 *L.Ed.*2d 472 (1984); *Muglar v. Kansas,* 123 *U.S.* 623, 8 *S.Ct.* 273, 31 *L.Ed.* 205 (1887).

In short, both New Jersey and Federal appellate decisions have continued to recognize the difference between regulations which render land unusable for general public reasons, such as esthetics or other broad environmental concerns, and those involving efforts to protect life and property against flood or other catastrophe. The Supreme Court has expressly recognized that distinction in *First Lutheran,* 482 *U.S.* at ——, 107 *S.Ct.* at 2384–2385, 2391–2392, 96 *L.Ed.*2d at 262–263, 270–271. Of course, a regulation which goes "too far" must be deemed a

taking. *Id.* at ——, 107 *S.Ct.* at 2393, 96 *L.Ed.*2d at 272 (citing *Pennsylvania Coal Co. v. Mahon,* 260 *U.S.* 393, 43 *S.Ct.* 158, 67 *L.Ed.* 322 (1922)) (Steven, J. dissenting). *See also Sheerr v. Evesham Tp.,* 184 *N.J.Super.* 11, 53 (1982).

On the present record we have no way of knowing the real impact of the questioned regulations and denial. Laurjo has not pursued its administrative remedies. The record does disclose that pursuit of those remedies might very well have resulted in little or no ultimate material consequence to the use or value of the property. "A court cannot decide whether a regulation has gone 'too far' unless it knows how far the regulation goes." *McDonald, Sommer & Frates v. Yolo County,* 477 *U.S.* 340, 348, 106 *S.Ct.* 2561, 2566, 91 *L.Ed.*2d 285, 294 (1986), reh'g den. 487 *U.S.* 1035, 107 *S.Ct.* 22, 92 *L.Ed.*2d 773 (1986).

We conclude that there was an insufficient factual legal basis for judgment compelling condemnation of Laurjo's property, and so reverse without prejudice to Laurjo's ability to pursue any available administrative remedies.