640 So.2d 79 (1994)
Michelle ALEXANDER, as Trustee, Appellant,
v.
TOWN OF JUPITER, a municipal corporation, Appellee.
No. 92-1772.
District Court of Appeal of Florida, Fourth District.
May 11, 1994.
Order Granting in Part Clarification or Rehearing as to Order Awarding Provisional, but Otherwise Denying Rehearing August 3, 1994.
John Beranek of Aurell Radey Hinkle Thomas & Beranek, Tallahassee, and Fred *80 H. Gelston of Damsel & Gelston, P.A., West Palm Beach, for appellant.
Thomas J. Baird of Thomas J. Baird, P.A., Palm Beach Gardens, for appellee.
Order Granting in Part Clarification or Rehearing as to Order Awarding Provisional Attorney Fees, but Otherwise Denying Rehearing August 3, 1994.
WARNER, Judge.
We are presented with the question of whether the "ripeness doctrine" precludes consideration of appellant's inverse condemnation claim of a temporary taking of her property through the denial of all use of the property by the Town of Jupiter pending the resolution of an inconsistency between the Town's comprehensive plan and its zoning regulations. The trial court held that it did. However, based on First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987),[1] we hold that the claim was ripe for adjudication and therefore reverse.
This case concerns two parcels of property located in the Town of Jupiter. Of primary concern to this appeal is an 11 acre island in the intracoastal waterway known as Fullerton Island. Appellant's interest in the properties arose from her pending real estate contract to purchase the property from the owner.
In 1979, Jupiter adopted a comprehensive land use plan which designated Fullerton Island as a conservation land use. Although section 163.3194, Florida Statutes (1979), required that after the adoption of a comprehensive plan all development and land use regulations must be in conformity with the plan, Jupiter's zoning ordinance did not include any provision for development within a conservation district. As early as 1984, the property was identified by Jupiter as one where the zoning would have to be changed in order to comply with the comprehensive plan. However, no corrective zoning was implemented.
In June 1988, appellant contracted with the owners of Fullerton Island to purchase the property.[2] Appellant intended to develop the island with single family homes. That same month, appellant applied to Jupiter for a clearing permit to remove trees from the island so that a survey could be conducted. The town officials denied the permit and told appellant that a clearing permit could not issue because of the inconsistency between the island's residential zoning and the conservation land use designation. In July 1988 the town's director of public services returned the permit application, informing appellant that "I [the town official] am unable to issue any permit of any type on the subject property" due to the inconsistency of the plan and the zoning ordinances.
To make a long history short, for the next two years appellant submitted several applications for developmental permits on the property, for rezoning, and for land use plan amendments, all of which were denied. The town opted instead to develop its own conservation zoning district ordinances, a task to which it set itself nearly nine years after the adoption of the comprehensive plan. Ultimately, conservation ordinances were adopted, and appellant and the town finally executed a development agreement and then a site plan on November 8, 1990.
After receiving her approvals, appellant filed suit for, among other things, inverse condemnation. The trial focused on the inverse condemnation cause of action. Appellant claimed that a temporary taking occurred from July 1988, the time that her first land clearing permit was denied and she was told that no permits would be issued, to the date of the final approval of her site plan.
There were a multitude of issues presented to the trial court, but the judge ruled on just one. He found that the "ripeness doctrine" precluded appellant's action because Jupiter *81 did not reach its "final decision" on the application of the zoning ordinances to the property when it denied all permits in July 1988. Since the zoning/plan inconsistency was not resolved until 1990, there was no final determination of the uses to which the property could be put until that time. The court cited Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 191-94, 105 S.Ct. 3108, 3119-20, 87 L.Ed.2d 126 (1985), and MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 348, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986). Noting that Florida has adopted this Federal ripeness doctrine, see Glisson v. Alachua County, 558 So.2d 1030 (Fla. 1st DCA 1990), the court determined that as Jupiter had not reached a "final decision" on the property on July 22, 1988, when it denied Plaintiff's request for a permit, the takings claim was not ripe for adjudication.
The trial court's reasoning would be very appropriate if by this action appellant had claimed a permanent taking. In fact, all of the cases cited in the final judgment deal with permanent taking claims. However, in this case the pleadings clearly requested compensation for a temporary taking. We analyze the ripeness issue in that light.
Government interference with the use of land is circumscribed by the Fifth Amendment to the U.S. Constitution which provides that "private property [shall not] be taken for public use, without just compensation." The Fifth Amendment applies to the states through the Fourteenth Amendment. Chicago B. & Q.R. Co. v. City of Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). Florida also has a similar provision. See Art. X, Sec. 6(a), Fla. Const.
In Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), Justice Holmes observed that "the general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Id. at 415, 43 S.Ct. at 160. While governmental regulatory restrictions arise from the exercise of the police power for the benefit of the public welfare, they amount to a constitutional taking of property "when that interference deprives the owner of substantial economic use of his or her property." Joint Ventures, Inc. v. Department of Transportation, 563 So.2d 622, 625 (Fla. 1990). In deciding whether a regulatory permit denial constitutes a taking, the United States Supreme Court has said, "Only when a permit is denied and the effect of the denial is to prevent `economically viable' use of the land in question can it be said that a taking has occurred." United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 127, 106 S.Ct. 455, 459, 88 L.Ed.2d 419 (1985).
Although regulatory takings trigger compensation claims, it was not clear until First English that compensation might be due for "temporary" takings. 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). In that case, the appellant church had operated a campground in a canyon area which had been destroyed by a flood. Thereafter, Los Angeles adopted an interim ordinance effective immediately prohibiting construction in the area to preserve public health and safety. 482 U.S. at 307-308, 107 S.Ct. at 2381-2382. The purpose of the ban was to allow the county time to study the necessity of future regulations. First English Evangelical Lutheran Church v. County of Los Angeles, 210 Cal. App.3d 1353, 258 Cal. Rptr. 893 (1989), cert. denied, 493 U.S. 1056, 110 S.Ct. 866, 107 L.Ed.2d 950 (1990).
The church sued for inverse condemnation because the ordinance resulted in depriving it of all use of its property. The California Court of Appeal rejected the contention that damages were available to redress a temporary regulatory taking, and the California Supreme Court denied review. 482 U.S. at 309, 107 S.Ct. at 2383. The United States Supreme Court granted certiorari review to address directly the question of whether the Just Compensation Clause required the government to compensate landowners for temporary regulatory takings.
Notably, the Court did not apply the "ripeness" doctrine of MacDonald and Williamson as the complaint alleged that the ordinance deprived the church of all use of the property, which at that stage of the proceedings was not challenged. Similarly, in the instant case, appellee has not challenged the *82 contention that no development, not even tree cutting, would be permitted on the island. Thus, this case comes to this court in a similar posture to First English.
In First English, the Court held that where a court determines that a taking has occurred, a government may elect to rescind or modify its regulation and thereby avoid having to pay compensation for a permanent deprivation. 482 U.S. at 321, 107 S.Ct. at 2389. But "where the government's activities have already worked a taking of all use of the property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." Id. See also Department of Transportation v. Weisenfeld, 617 So.2d 1071 (Fla. 5th DCA 1993).
The present case is analogous to First English. Los Angeles had adopted an interim ordinance in order to give it time to study its zoning regulations in light of the flooding problems in the canyon in which the church's property was located. 482 U.S. at 307-308, 107 S.Ct. at 2381-2382. Similarly, Jupiter denied all permitting of appellant's property in order to give it time to work out inconsistencies between its land use plan and its zoning regulations. In each case, all use of the property was prevented.
Jupiter counters this analysis by claiming that a zoning regulation is required to effect a taking. However, a permit denial can be the basis of a regulatory taking if the effect of the denial is to prevent all use of the property. United States v. Riverside Bayview Homes, Inc., 474 U.S. at 127, 106 S.Ct. at 459, n. 4. In the instant case the tree cutting permit denial was followed by a statement that no permit for any development would be approved until the inconsistency was resolved, an inconsistency which had not been addressed for the nine years the plan was in existence. Therefore, we find that the permit denial was government regulatory action which amounted to a temporary taking of all use of the property in this case and as such was ripe for adjudication of the compensation claim raised.
Jupiter cites Pinellas County v. Brown, 420 So.2d 308 (Fla. 2d DCA 1982), rev. denied, 430 So.2d 450 (1983), in support of its position. In that case landowners sought a development permit to build a manufacturing plant in an area zoned for such use. However, the county denied the permit because the zoning on the land was inconsistent with the land use plan which did not allow such intense use of the land. The landowners petitioned the county to amend the plan to allow such use, but the county instead proceeded to rezone the property to prevent manufacturing use. The landowners sued, and during the litigation the county decided to allow the manufacturing permit to proceed. Therefore the landowners' suit was tried under a theory of inverse condemnation for a temporary taking. A judgment for damages was obtained, but the Second District reversed on appeal, finding that the landowners were only deprived of a particular use, not all use of their property and secondly, that they were only deprived temporarily of such use. Pinellas County was decided long before First English's recognition of temporary regulatory takings and is thus, in our opinion, no longer good law to the extent that it grounded its decision on the fact that the taking was at most temporary.
Jupiter offers alternative reasons upon which the trial court's order could be affirmed. First, it contends that appellant was always able to develop the mainland parcel and that the island was inseparable from development of the mainland, defeating the notion that all development was prohibited. Appellant did not seek compensation for denial of her use of the mainland parcel. Whether these two parcels should be treated for condemnation purposes as a single tract is a question of the application of various factors which should be decided by the trial court on remand. See Department of Transportation v. Jirik, 498 So.2d 1253 (Fla. 1986).
The town also argues that no taking occurred since appellant had only a nominal deposit on the property, and she had not closed on the property because her contract was contingent on rezoning. The extent of appellant's reasonable investment-backed expectation is one of the factors to be considered by the court in conducting a takings analysis, see Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla.), cert. denied, 454 U.S. 1083, *83 102 S.Ct. 640, 70 L.Ed.2d 618 (1981), which the trial court can undertake upon remand.
Finally, Jupiter contends that its two year delay in resolving its zoning/plan inconsistency was a "normal" delay in land use planning contemplated by First English when Chief Justice Rehnquist wrote:
and of course [we] do not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like which are not before us. We realize that even our present holding will undoubtedly lessen to some extent the freedom and flexibility of land-use planners and governing bodies of municipal corporations when enacting land-use regulations. But such consequences necessarily flow from any decision upholding a claim of constitutional right; many of the provisions of the Constitution are designed to limit the flexibility and freedom of governmental authorities, and the Just Compensation Clause of the Fifth Amendment is one of them... .
482 U.S. at 321, 107 S.Ct. at 2389. We admit that this distinction is hard to apply, particularly in a case such as this where we deal with a resolution of plan consistency which is required by statute. Section 163.3194(1), Florida Statutes (1979). However, section 163.3201, Florida Statutes (1979), states that the implementation of a comprehensive plan shall be by local land use regulations (zoning). In the instant case, for eight years the town neglected to resolve the inconsistency. Its claim that "these things take time" sounds rather hollow when in reality the situation was simply ignored. Furthermore, section 163.3202, Florida Statutes (1985), gives us some standard of reasonableness of delay in resolving zoning/plan inconsistencies. That statute requires the adoption of land use regulations in conformity with the plan within one year from after state approval of the comprehensive plan. While state approval was not necessary for the comprehensive plan involved here, the statute sets as a time limit one year for the resolution of inconsistencies.[3] This zoning change, when noticed, took twice that time. Thus, while we do not decide the issue of "normal" delay, we point out why on this record the issue of such delay does not justify affirmance on a "right for the wrong reasons" analysis.
Because we find that the issue of whether a compensable taking occurred was indeed ripe for adjudication, we reverse and remand to the trial court for further proceedings.
ANSTEAD and GUNTHER, JJ., concur.
BY ORDER OF THE COURT:
ORDERED that appellant's motion filed May 16, 1994, for rehearing and for extension of time is granted as to the extension of time. The time for appellant to supplement her motion for rehearing is hereby extended to and including June 24, 1994; further,
ORDERED that appellee's motion filed May 26, 1994, for clarification/rehearing as to order awarding provisional attorney fees is hereby granted in part. We modify our order of May 11, 1994, to state  appellant's September 1, 1992, request for attorney's fees and costs is hereby provisionally granted and remanded pending final determination of whether a compensable taking occurred; further,
ORDERED that appellee's motion filed May 26, 1994, for clarification or for rehearing is hereby denied; further,
ORDERED that appellant's motion filed June 24, 1994, for rehearing on attorneys' fees is hereby denied.
NOTES
[1] See also Lucas v. South Carolina Coastal Council, ___ U.S. ___, ___, 112 S.Ct. 2886, 2902, 120 L.Ed.2d 798 (1992) (Kennedy concurring) "It is well established that temporary takings are as protected by the constitution as are permanent ones."
[2] The town argues that appellant had no interest in the property sufficient to entitle her to standing to even assert a claim. The town suggests that her interest in the property was essentially contingent, not rising to a compensable claim. The issue was not raised below. Therefore, we do not address it here and leave it for further attention and development in the trial court upon remand. We do address briefly the issue of "reasonable investment-backed expectations in property" later on in this opinion.
[3] That does not mean that we hold that delays of less than one year are ipso facto reasonable. We simply do not decide this issue.