In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00125-CR
______________________________


WESLEY DEWAYNE WILLIAMS, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 31733-B


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Wesley Dewayne Williams appeals his conviction for aggravated assault, with a
deadly weapon finding. Williams was accused of shooting John Mumphrey in the back and
in the head. Mumphrey and two other witnesses testified Williams was the gunman. In
addition, Williams' cousin testified Williams admitted he was the gunman. A jury convicted
Williams of aggravated assault and assessed his punishment at eighteen years'
imprisonment. The trial court sentenced Williams consistent with the jury's verdict. On
appeal, Williams contends the trial court erred in denying a mistrial after the prosecutor
made comments indicating Williams was in custody at the time of trial. 
Â Â Â Â Â Â Â Â Â Â During the trial, the prosecutor asked a question that could be interpreted as a
reference to the fact that Williams was being held in custody at the time of trial. The
prosecutor asked during cross-examination: "You've had a long time to sit up there and
think about what you're going to say to these folks today, haven't you?" Williams' attorney
promptly objected that the statement was an obvious reference to Williams being in jail,
and the trial court properly sustained the objection. The question was not answered, and
the trial court instructed the jury to disregard the question. The trial court, though, denied
the motion for a mistrial. 
Â Â Â Â Â Â Â Â Â Â Williams contends, in his sole point of error, that the trial court erred in denying the
motion for mistrial. According to Williams, the question violated his right to a fair trial and
the presumption of innocence. See Randle v. State, 826 S.W.2d 943, 944â46 (Tex. Crim.
App. 1992). Williams argues that the curative instruction was not sufficient to cure the
error. While the State concedes that the law requires the fact that a defendant is being
held in jail to be hidden from the jury, the State contends a mistrial was not required. We
agree.
Â Â Â Â Â Â Â Â Â Â The granting of a mistrial is an extreme remedy. Brossette v. State, 99 S.W.3d 277,
282â83 (Tex. App.âTexarkana 2003, pet. dism'd). The asking of an improper question
will seldom call for a mistrial because, in most cases, any harm can be cured by an
instruction to disregard. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). A
mistrial is required only when the improper question is clearly prejudicial to the defendant
and is of such character as to suggest the impossibility of withdrawing the impression
produced on the minds of the jurors. Id. A trial court's denial of a mistrial is reviewed
under an abuse of discretion standard. Id.; State v. Gonzalez, 855 S.W.2d 692, 696 (Tex.
Crim. App. 1993).
Â Â Â Â Â Â Â Â Â Â This Court has held in a similar case that a curative instruction was sufficient to cure
the harm of an allegedly improper question which referenced the fact that the defendant
was in custody. See Sharper v. State, 22 S.W.3d 557, 558 (Tex. App.âTexarkana 2000,
no pet.). In Sharper, the prosecutor asked a codefendant if he had been in the "hold-over"
with the defendant for the past two or three days. Id. This Court held that the instruction
to disregard was sufficient to cure any harm. Id. Williams attempts to distinguish our
holding in Sharper on the basis that the reference in Sharper did not concern long-term
detention, unlike the current case. We disagree that the period of detention makes this
case distinguishable from Sharper.
Â Â Â Â Â Â Â Â Â Â The question at issue is not of such character as to suggest the impossibility of
withdrawing the impression produced on the minds of the jurors. The question did not
imply that another offense had been committed by Williams. See Swallow v. State, 829
S.W.2d 223, 227 (Tex. Crim. App. 1992) (a question which implies commission of another
offense can seldom be cured); see also Ladd, 3 S.W.3d at 567 (question asked to solicit
specific extraneous bad act). While the question was improper, it was possible for the
jurors to withdraw the impression from their minds. Further, the evidence of guilt was
substantial. Because the curative instruction was sufficient to cure any harm resulting from
the improper question, the trial court did not err in refusing to grant a mistrial. We overrule
Williams' sole point of error.
Â Â Â Â Â Â Â Â Â Â For the reasons stated, we affirm the judgment.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Â 
Date Submitted:Â Â Â Â Â Â February 28, 2005
Date Decided:Â Â Â Â Â Â Â Â Â April 12, 2005

Do Not Publish




se" Priority="60" SemiHidden="false"
 UnhideWhenUsed="false" Name="Light Shading Accent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-11-00065-CV

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  CITY OF PARIS AND KEVIN CARRUTH,
Appellants

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  RANGER ABBOTT, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 62nd
Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Lamar County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial
Court No. 79627

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Opinion by Justice Moseley








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  O P I N I O N

Â 

Â Â Â Â Â Â Â Â Â Â Â  Ranger Abbott purchased real
property within the City of Paris, Texas (City), with the intention of using it
as a mobile home park based upon his belief that City Manager, Kevin Carruth,
had made a representation that the entire property was approved for
nonconforming use, so long as it continued to be used as a mobile home
park.Â  Abbott submitted a preliminary
plat outlining the locations of new roadways, driveways, trailer pads, and
utilities to the CityÂs Planning and Zoning Department (Department), after
which the Department informed him that he would have to get the property rezoned
from a commercial category to single family dwelling No.Â 3.Â  Abbott sued the City and Carruth, alleging
multiple claims, after which Abbott submitted an application to the City for a
building permit, which was denied.Â  The
City and Carruth filed a plea to the jurisdiction, which the trial court
granted with respect only to AbbottÂs claims filed under the Texas Tort Claims
Act.[1]Â  The trial court denied the CityÂs plea to
jurisdiction relating to AbbottÂs claims for Âinverse condemnation, for
violations of procedural and substantive due process and equal protection and
for breach of contract and declaratory relief, without prejudice to DefendantsÂ
right to reurge their Plea as to these claims.ÂÂ 
Pursuant to Section 51.014(8) of the Texas Civil Practice and Remedies
Code, the City and Carruth bring this
accelerated, interlocutory appeal from the denial of a plea on these claims.[2]Â  See
Tex. Civ. Prac. & Rem. Code Ann.
Â§Â 51.014(8) (West 2008).Â  Because
the trial court did not have subject-matter jurisdiction, we reverse the trial
courtÂs judgment and render judgment dismissing AbbottÂs claims. 

I.Â Â Â Â Â Â Â Â Â  Factual
and Procedural History 

Â Â Â Â Â Â Â Â Â Â Â  The subject of this suit is a 7.77
acre tract of land located in Paris, Texas, now owned by Abbott.Â  Prior to its annexation by the City, about
half of the property was used as a mobile home and travel trailer park and the
other part was vacant.Â  Abbott became
interested in purchasing the entire tract with the goal of expanding the mobile
home park to encompass the full acreage.Â 
After Abbott notified the City of his plans and had consulted with city
officials, Carruth penned a May 8, 2008, letter to Abbott, which included the
following: 

According
to the zoning records of the City of Paris the above-referenced property is
currently zoned Commercial (C); however, it is my understanding that there is a
mobile home park on the property which has been continuously operated since
originally opening several years ago.Â 
Unless its use as a mobile home park ceases in its entirety it is
considered a non-conforming use by the City.Â 


Â 

Notwithstanding
any current moratoriums which may affect the property and as long as the
property continues to be used as a mobile home park, its non-conforming use
will be allowed.Â  Further, this right to
non-conforming use will transfer to you if you buy the property, and will be
transferable by you to a new owner of the property.

Â 

Lastly,
your proposed use of the property to construct single or multifamily dwellings
from permanent or portable intermodal steel building units will be allowed
under the current zoning of the property, assuming the intermodal units comply
with applicable building codes.

Â 

The
letter was signed ÂKevin Carruth City Manager.ÂÂ 
Abbott believes this letter established a contract between him and the
City.[3]Â  

Â Â Â Â Â Â Â Â Â Â Â  In reliance upon this letter, Abbott
purchased the property and began planning the expansion of the mobile home
park.Â  Abbott sent a preliminary plat to
the Department, which detailed the proposed locations of roadways, driveways,
trailer pads, and utilities.Â  He made
arrangements with utility providers for the installation of electrical, water,
and sewer services, and also purchased twenty mobile homes in expectation of
the plat approval.Â  In response to the
preliminary plat, Abbott received a letter dated May 20, 2010, stating, ÂThe
following are areas that need to be corrected before a permit can be issued: Â 1. Current zoning on the property is
Commercial.Â  In order to place additional
Manufactured Homes it must be zoned Single Family Dwelling District No. 3. . .
.Â 

Â Â Â Â Â Â Â Â Â Â Â  On June 21, 2010 and July 1, 2010,
Abbott submitted written requests to appear before the City Council, both of
which were denied.Â  Almost a month after
suit was filed (July 16, 2010), Abbott submitted a building permit application
and notice of claim to the City Âregarding the damages incurred by Plaintiff
due to the CityÂs actions in breach of the City ManagerÂs letter.ÂÂ  On August 20, 2010, the permit application
was returned to Abbott with the notation that as Âdiscussed in person and by
telephone over the last four weeks,Â the permit application was denied.Â  

Â Â Â Â Â Â Â Â Â Â Â  Abbott sued the City and Carruth on
July 22, 2010, raising claims of breach of contract, regulatory taking without
just compensation, violations of due process and the equal protection clause,
and the Texas Tort Claims Act.Â  He
complained of 

damage
with regard to the cost of the mobile homes purchased for the expansion of the
mobile home park, their transportation, storage and interest expenses, loss of
revenue, the costs of insurance, interest and the relocation of set mobile
homes, in addition to the devaluation of the mobile home park.

Â 

Abbott
sought a temporary injunction 

from
1) requiring Plaintiff to submit to and undertake a re-zoning of the Property
from its current Âapproved, non-conforming useÂ; 2) preventing Plaintiff from
his proposed expansion of mobile home park on the Property except with regard
to PlaintiffÂs compliance with DefendantÂs applicable building codes; or 3)
otherwise taking any action which is contrary to, or inconsistent with,
PlaintiffÂs right to continue to use the Property for a mobile home park or
travel trailer park.

Â 

He
also believed he was entitled to declaratory judgment[4]
that 

(1)
Plaintiff is not required to obtain re-zoning of the Property as a condition to
expanding the mobile home park; (2) that as long as the Property continues to
be used as a mobile home park or travel trailer park, its non-conforming use
will be allowed; and (3) that the right to maintain a mobile home park at the
Property, as a non-conforming use, is transferrable by Plaintiff to a new owner
of the property.

Â 

Â Â Â Â Â Â Â Â Â Â Â  The City filed a plea to the
jurisdiction urging governmental immunity, which was granted by the trial court
with respect to AbbottÂs Texas Tort Claims Act claim, but denied with respect
to all other claims.Â  The City indicates
to this Court that it believes the denial of its plea to the other elements of
the lawsuit was erroneous.Â  

II.Â Â Â Â Â Â Â  Standard
of Review 

Â Â Â Â Â Â Â Â Â Â Â  A plea to the jurisdiction based on
governmental immunity challenges a trial courtÂs jurisdiction.Â  State
v. Holland, 221 S.W.3d 639, 642 (Tex. 2007) (citing Tex. DepÂt of Parks & Wildlife v. Miranda, 133 S.W.3d 217,
225Â26 (Tex. 2004)).Â  A plea questioning
the trial courtÂs jurisdiction is reviewed de novo.Â  Id.Â  In some instances, however, a plea to the
jurisdiction may require the court to consider evidence pertaining to jurisdictional
facts.Â  Id.; Bland Indep. Sch. Dist.
v. Blue, 34 S.W.3d 547, 555 (Tex. 2000).Â 
We focus first on AbbottÂs petition to determine whether the facts pled
affirmatively demonstrate that jurisdiction exists.Â  Holland,
221 S.W.3d at 642Â43.Â  We construe the
pleadings liberally, looking to AbbottÂs intent.Â  Id.
at 643.[5]Â  ÂA plea should not be granted if a fact issue
is presented as to the courtÂs jurisdiction, but if the relevant undisputed
evidence negates jurisdiction, then the plea to the jurisdiction must be
granted.ÂÂ  Id.

III.Â Â Â Â Â Â  Trial Court Was Without Jurisdiction Over Contract Claims 

Â 

Â Â Â Â Â Â Â Â Â Â Â  AbbottÂs suit stems from the
DepartmentÂs denial of his building permit, an action which he argues
established a breach of CarruthÂs letter.Â 
Exhaustion of administrative remedies is a jurisdictional prerequisite.Â  Lamar
Corp. v. City of Longview, 270 S.W.3d 609, 613 (Tex. App.ÂTexarkana 2008,
no pet.).Â  If an agency has exclusive
jurisdiction, a claimant must exhaust all administrative remedies in the agency
before filing a claim in the trial court.Â 
In re NewÂ Hampsire Ins. Co.,
No. 13-11-00198-CV, 2011 WL 3805721, at *3 (Tex. App.ÂCorpus Christi Aug. 29,
2011, pet. denied) (citing In re Entergy,
142 S.W.3d 316, 321 (Tex. 2004)). Â ÂUntil
the party has exhausted all administrative remedies, the trial court lacks
subject matter jurisdiction and must dismiss any claim within the agencyÂs
exclusive jurisdiction.Â Â Entergy, 142 S.W.3d at 321Â22.Â  The exhaustion requirement ensures that the
administrative agency has the opportunity to resolve disputed fact issues
within its exclusive jurisdiction before a court must address those
issues.Â  New Hampsire Ins. Co., 2011 WL 3805721, at *3 (citing Essenburg v. Dallas County, 988 S.W.2d
188, 189 (Tex. 1998) (per curiam)). 

Â Â Â Â Â Â Â Â Â Â Â  The creation of a board of
adjustment for purposes of appeal is authorized by the Texas Local Government
Code.Â  Section 211.008 states, 

The
governing body of a municipality may provide for the appointment of a board of
adjustment.Â  In the regulations adopted
under this subchapter, the governing body may authorize the board of
adjustment, in appropriate cases and subject to appropriate conditions and
safeguards, to make special exceptions to the terms of the zoning ordinance
that are consistent with the general purpose and intent of the ordinance and in
accordance with any applicable rules contained in the ordinance.

Â 

Tex. Loc. GovÂt Code Ann. Â§ 211.008 (West 2008).Â  Section 16-100 of the City of Paris Zoning
Ordinance[6] provides for the creation of
such a board of adjustment.Â  Paris, Tex., Zoning Ordinance 1710 Â§
16-100 App. C (1957), available at http://library.municode.com/index.
aspx?clientID =11784&stateID=43&statename=Texas.Â  A person aggrieved by an action by an
administrative official may appeal that action to the board of adjustment. Â Tex.
Loc. GovÂt Code Ann. Â§ 211.010(a)(1) (West 2008).Â  Section 16-102 states, ÂAppeals to the Board
of Adjustment can be taken by any person aggrieved or by an officer, department
or board of the municipality affected by the decision of the administrative
officer,Â and provides further procedural instructions.Â  Paris,
Tex., Zoning Ordinance 1710 Â§ 16-102 App. C.Â  In exercising its authority, a board of
adjustment

may
reverse or affirm, in whole or in part, or modify [an] administrative
officialÂs order, requirement, decision, or determination from which an appeal
is taken and make the correct order, requirement, decision, or determination,
and for that purpose the board has the same authority as the administrative
official. 

Â 

Tex. Loc. GovÂt Code Ann.
Â§ 211.009(b) (West 2008). Â Â Â Â Â Â Â  Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  The statutory scheme (adopted by the
City) requires Abbott to appeal the DepartmentÂs decision first with the board
of adjustment.[7] Â As explained in Horton v. City of Smithville, 

Section
211.010(a) provides that an aggrieved party Âmay appeal to the board of adjustment a decision made by an
administrative official.Â Â Tex. Loc. GovÂt Code Ann. Â§ 211.010(a)
(emphasis added). Â When a statute
provides that a party ÂmayÂ appeal, such language has been interpreted to mean
that an aggrieved party may appeal, but if an appeal is taken, it must be taken to the administrative
entity. Â Grimes v. Stringer, 957 S.W.2d 865, 869 (Tex. App.ÂTyler 1997, pet.
denied).

Â 

No.
03-07-00174-CV, 2008 WL 204160, at *4 (Tex. App.ÂAustin Jan. 25, 2008, pet.
denied) (mem. op.).

Â 

Â Â Â Â Â Â Â Â Â Â Â  Because Abbott did not appeal the
denial of the building permit (the action from which his causes of action
arise) to the CityÂs board of adjustment, he failed to exhaust administrative
remedies, and the trial court did not have subject-matter jurisdiction over the
breach of contract claim.Â  Id.; Wynn
v. City of Irving, 770 S.W.2d 10, 11 (Tex. App.ÂDallas 1989, no writ) (ÂIt
is settled that the administrative remedies provided by Local Government Code
section 211.009Â.010 . . . must be exhausted before matters regarding
nonconforming uses may be brought before the courts.Â).Â  

Â Â Â Â Â Â Â Â Â Â Â  Moreover, the CityÂs plea to the
jurisdiction was based upon the concept of governmental immunity.Â  Governmental immunity[8]
is a common law doctrine.Â  City of Galveston v. State, 217 S.W.3d
466, 471 (Tex. 2007).Â  Absent an express
waiver of its immunity, the governmental entity is generally immune from suit. Â Holland, 221 S.W.3d at 643; State v. Shumake, 199 S.W.3d 279, 283
(Tex. 2006); see Gen. Servs. CommÂn v.
Little-Tex Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001).Â  Governmental immunity is comprised of
immunity both from suit and from liability.[9]Â  Little-Tex,
39 S.W.3d at 594; see Tex. DepÂt of
Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999).Â  

[I]mmunity
from suit bars an action against the state unless the state expressly consents
to the suit. Â The party suing the
governmental entity must establish the stateÂs consent, which may be alleged
either by reference to a statute or to express legislative permission. Â Since as early as 1847, the law in Texas has
been that absent the stateÂs consent to suit, a trial court lacks subject
matter jurisdiction.

Â 

Jones, 8 S.W.3d at 638 (citations omitted); see Little-Tex,
39 S.W.3d at 594; Miranda, 133 S.W.3d
at 224.Â  Legislative consent to sue the
governmental entity must be expressed in Âclear and unambiguous language.ÂÂ  Little-Tex,
39 S.W.3d at 594 (quoting Univ. of Tex.
Med. Branch v. York, 871 S.W.2d 175, 177 (Tex. 1994)).

Â Â Â Â Â Â Â Â Â Â Â  ÂWhen the State contracts, it is
liable on contracts made for its benefit as if it were a private person.Â  Consequently, when the State contracts with
private citizens it waives immunity from liability. But the State does not
waive immunity from suit simply by contracting with a private person.Â  Legislative consent to sue is still
necessary.ÂÂ  Little-Tex, 39 S.W.3d at 594 (citations omitted); see Tooke
v. City of Mexia, 197 S.W.3d 325, 332 (Tex. 2006).Â  

Â Â Â Â Â Â Â Â Â Â Â  AbbottÂs pleadings contained
statements that the City waived immunity through its conduct.[10]Â  A 1997 Texas Supreme Court opinion entitled Federal Sign v. Texas Southern University
(cited in AbbottÂs brief), contains a footnote which seemingly encourages the
possibility of waiver of immunity by conduct.Â 
951 S.W.2d 401, 408 n.1 (Tex. 1997).Â 
There, the court wrote that there could be Âcircumstances where the
State may waive its immunity by conduct other than simply executing a contract
so that it is not always immune from suit when it contracts.ÂÂ  Id. Â Citing Federal
Sign and various courts of appeals opinions which followed, the argument of
waiver of immunity from suit based on conduct was raised in Little-Tex. Â Little-Tex,
39 S.W.3d at 595. Â Little-Tex acknowledged Federal Sign and its progeny, but
expressly rejected the waiver by conduct doctrine because Âthe situation ha[d]
changedÂ due to the LegislatureÂs enactment of Âa dispute-resolution procedure
to resolve certain breach-of-contract cases against the StateÂ as codified in
Chapter 2260 of the Texas Government Code.Â 
Id. at 595, 597.Â  That chapter requires alternative dispute
resolution as a prerequisite to presenting breach of contract claims in court. 

Â Â Â Â Â Â Â Â Â Â Â  Due to the post-Federal
Sign legislative action, Little-Tex held that Âthe State does not
waive its immunity from a breach-of-contract action by accepting the benefits
of a contract,Â and concluded Âthat there is but one route to the courthouse
for breach-of-contract claims against the State, and that route is through the Legislature.Â
Â Id.
at 598; see Tex. Natural Res.
Conservation CommÂn v. ITÂDavy, 74 S.W.3d 849, 857 (Tex. 2002) (ÂCreating a
waiver-by-conduct exception would force the State to expend its resources to
litigate the waiver-by-conduct issue before enjoying sovereign immunityÂs
protectionsÂand this would defeat many of the doctrineÂs underlying
policies.Â).Â  In that case, because
Chapter 2260Âs express language stated that the administrative proceedings are
a precursor to legislative consent to sue, Little-Tex
held that failure to comply with the procedure prohibited pursuit of the breach
of contract claim and dismissed the appeal for want of jurisdiction.Â  Little-Tex,
39 S.W.3d at 598, 600. Â However, Chapter 2260 specifically excluded
municipalities from the statutorily required alternative dispute
mechanism.Â  Tex. GovÂt Code Ann. Â§ 2260.001(4) (West 2008).Â  

Â Â Â Â Â Â Â Â Â Â Â  While the StateÂs sovereign immunity
was at issue in Little-Tex, the
CityÂs governmental immunity is at issue here.Â 
In order to curb the application of Little-Tex
from foreclosing suit filed by plaintiffs with claims against local
governmental entities (who were not included in Chapter 2260Âs waiver of
immunity), the Legislature treated cities somewhat differently, enacting
Section 271.151 of the Texas Local Government Code Âto loosen the immunity
bar.ÂÂ  Kirby Lake Dev., Ltd. v.
Clear Lake City Water Auth., 320 S.W.3d 829, 838 (Tex. 2010).Â  Whereas, under Little-Tex, 39 S.W.3d at 598, Âthe State does not waive its
immunity from a breach-of-contract action by accepting the benefits of a
contract,Â a local governmental entity authorized by statute or the State
constitution to enter into a contract waives governmental immunity to suit for
the purpose of adjudicating a claim for breach of a contract subject to the
provisions of Chapter 271 of the Texas Local Government Code.Â  Tex.
Loc. GovÂt Code Ann. Â§ 271.152 (West 2005). 

Â Â Â Â Â Â Â Â Â Â Â  Section 271.152 provides:

A
local governmental entity that is authorized by statute or the constitution to
enter into a contract and that enters into a contract subject to this
subchapter waives sovereign immunity to suit for the purpose of adjudicating a
claim for breach of the contract, subject to the terms and conditions of this
subchapter.

Â 

Tex. Loc. GovÂt Code Ann. Â§ 271.152. Â The statute goes further to define a
Â[c]ontract subject to this subchapterÂ as Âa written contract stating the
essential terms of the agreement for providing goods or services to the local governmental
entity that is properly executed on behalf of the local governmental entity.Â Â Tex.
Loc. GovÂt Code Ann. Â§ 271.151(2).Â 
As can be seen, the statute is specific; it requires (1) a written
contract, (2) properly executed, (3) stating the essential terms of the
agreement, (4) for goods or services, (5) entered into by a local governmental
entity, (6) who had authority to contract.Â 


Â Â Â Â Â Â Â Â Â Â Â  The City asserts that CarruthÂs
letter was not a contract with Paris, there was no consideration for any
agreement, and Carruth was not authorized[11]
to bind the governmental entity.Â 
However, as noted in Kirby Lake,
Â[t]he relevant inquiry is whether the Agreements entail the provision of
Âgoods or servicesÂ to theÂ local governmental entity.Â  320 S.W.3d at 839; see Water Exploration Co. v. Bexar Metro. Water Dist., 345 S.W.3d
492, 495 (Tex. App.ÂSan Antonio 2011, no pet. h.) (deciding whether contract
was for goods or services to answer threshold question of courtÂs jurisdiction
over breach of contract claim).Â  

Â Â Â Â Â Â Â Â Â Â Â  Although Chapter 271 provides no
definition for the term Âservices,Â the term is generally Âbroad enough to
encompass a wide array of activities.ÂÂ  Kirby Lake, 320 S.W.3d at 839. Â ÂIn ordinary usage the term ÂservicesÂ has a
rather broad and general meaning,Â and Â[i]t includes generally any act
performed for the benefit of another under some arrangement or agreement
whereby such act was to have been performed.Â Â Id. Â However, there must be some obligation to
perform. Â AbbottÂs pleadings neither
suggest that he was obligated to perform any service for the City, nor that he
was to provide any goods to the City.Â 
Therefore, we find that CarruthÂs letter was not a contract for goods or
services.Â  

Â Â Â Â Â Â Â Â Â Â Â  The Texas Supreme Court has
Âconsistently deferred to the Legislature to waive . . . immunity from suit,
because this allows the Legislature to protect its policymaking function.Â Tooke, 197 S.W.3d at 332. Â Little-Tex
determined that because immunity is waived by the Legislature, the only route
to the courthouse for breach of contract claims was through the legislative
procedure described in Chapter 2260, which addressed breach of contract
claims.Â  As in Little-Tex, the Legislature has spoken by enacting a statute which
caused there to be a waiver of governmental immunity only for certain breach of
contract claims meeting the requirements of Chapter 271.Â  By omitting a blanket waiver of immunity for
all contracts entered into by a governmental entity with authority, the
Legislature expressed its intention that it did not wish to waive governmental
immunity for contracts which could not be classified as a contract for goods or
services.Â  Water Exploration Co., 345 S.W.3d at 501 (in affirming grant of
plea to jurisdiction, San Antonio reasoned, Â[h]ad the Legislature intended to waive
immunity for all contracts entered into by the State, it would have so statedÂ)
(citing E. Houston Estate Apartments, LLC v. City of Houston, 294 S.W.3d 723,
736 (Tex. App.ÂHouston [1st Dist.] 2009, no pet.) (affirming trial courtÂs
grant of plea to jurisdiction on claim of breach of loan agreement, which was
not a good or service as contemplated by LegislatureÂs limited waiver of
governmental immunity)).Â  Following the
logic in Little-Tex, Chapter 217 also
prevents waiver of governmental immunity through conduct.Â  

Â Â Â Â Â Â Â Â Â Â Â  Because Abbott failed to exhaust
administrative remedies, and because the breach of contract claim does not fall
within the confines of Chapter 271 (which waives governmental immunity for
contracts involving goods and services), we find that the trial court was
without subject-matter jurisdiction and that the denial of the plea to the
jurisdiction on the contract claim was erroneous. 

IV.Â Â Â Â Â Â  Trial
Court Was Without Jurisdiction Over Declaratory Judgment Claims 

Â 

Â Â Â Â Â Â Â Â Â Â Â  The Uniform Declaratory Judgments
Act does not enlarge a courtÂs jurisdiction; it is a procedural device for
deciding cases already within a courtÂs jurisdiction. Â City of
El Paso v. Heinrich, 284 S.W.3d 366, 370Â71 (Tex. 2009); IT-Davy, 74 S.W.3d at 855. Â Under the declaratory judgments portion of the
pleading, Abbott asks the trial court to declare that the propertyÂs
nonconforming use will be allowed. Â The
CityÂs zoning ordinance states that a Ânonconforming status shall existÂ
Â[w]hen a use or structure which does not conform to the regulations prescribed
in the district in which such use or structure is located was in existence at
the time of annexation,Â Âand [was] lawfully constructed, located and operating
in accordance with the provision of the prior zoning ordinance or which was a
nonconforming use thereunder.ÂÂ  Paris, Tex., Zoning Ordinance 1710 Â§
15-100(b), (c) App. C (1957). Â ÂAny
nonconforming use of land or structures may be continued for definite periods
of time subject to such regulations as the Board of Adjustment may require for
immediate preservation of the adjoining property prior to the ultimate removal
of the nonconforming use.ÂÂ  Paris, Tex., Zoning Ordinance 1710 Â§Â 15-101
App. C (1957). Â The DepartmentÂs denial
of a permit does not establish that the nonconforming use of AbbottÂs property
has been disallowed; even if it had done so, there was no appeal of that stance
to the board of adjustment, which has not spoken upon the matter.Â  The statement by the Department regarding
rezoning contemplated the proposed expansion by Abbott of the mobile home park
to areas of the property not previously in such a nonconforming use. Abbott
could not circumvent the required exhaustion of administrative remedies by
pursuing relief under the Uniform Declaratory Judgments Act.Â  Because there was neither a denial of the use
of the property in conformity with its past (ÂgrandfatheredÂ) use, nor any
exhaustion of the administrative remedies which were available to Abbott, the
trial court was without jurisdiction to address this request for declaratory
judgment. 

Â Â Â Â Â Â Â Â Â Â Â  Abbott also sought a declaration
that he is not required to obtain rezoning of the Property as a condition of
expanding the mobile home park and that the right to maintain a mobile home
park is transferrable by him to a new owner of the property. Â These requests are directly based upon
representations made by Carruth in the letter, which was the genesis of
AbbottÂs claim.Â  

Â Â Â Â Â Â Â Â Â Â Â  The Texas Supreme Court wrote in IT-Davy:

Â Â Â Â Â Â Â Â Â Â Â  Private parties may seek declaratory
relief against state officials who allegedly act without legal or statutory
authority. Â But such suits are not Âsuits
against the State.Â Â This is because
suits to compel state officers to act within their official capacity do not
attempt to subject the State to liability. Â Therefore, certain declaratory-judgment
actions against state officials do not implicate the sovereign-immunity
doctrine. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  In contrast, declaratory-judgment
suits against state officials seeking to establish a contractÂs validity, to
enforce performance under a contract, or to impose contractual liabilities are
suits against the State. Â That is because
such suits attempt to control state action by imposing liability on the State. Â Consequently, such suits cannot be maintained
without legislative permission. Â And,
private parties cannot circumvent the StateÂs sovereign immunity from suit by
characterizing a suit for money damages, such as a contract dispute, as a
declaratory-judgment claim. 

Â 

74
S.W.3d at 855Â56 (citations omitted); see
City of Houston v. Williams, 216 S.W.3d 827, 828Â29 (Tex. 2007) (per
curiam); Tex. So. Univ., 212 S.W.3d at
903; see also Tex. Civ. Prac. & Rem. Code Ann. Â§ 37.006(b) (West 2008).

Â Â Â Â Â Â Â Â Â Â Â  In this case, Abbott is not alleging
that Carruth acted without authority; rather, he claims that the letter was
executed within CarruthÂs authority and that the city council ratified the
letter in such a manner that the representations made in the letter bound the
City.Â  With respect to these requests for
declaration, Abbott is seeking to enforce the letter as a contract.Â  Where a party Âseek[s] a declaratory judgment
only in an attempt to have the trial court decide its breach-of-contract
claim,Â the Ârequest for declaratory relief does not waive . . . immunity from
suit and cannot be maintained without legislative consent.ÂÂ  IT-Davy,
74 S.W.3d at 860. 

Â Â Â Â Â Â Â Â Â Â Â  The trial court should have granted
the plea to the jurisdiction on AbbottÂs declaratory judgment claims. 

V.Â Â Â Â Â Â Â  Trial Court Was Without Jurisdiction Over Takings Claims 

Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Although immunity bars
breach-of-contract claims, the doctrine does not shield the government from an
action for compensation under the takings clause.Â  Little-Tex,
39 S.W.3d at 598.Â  Abbott asserted both
federal and state takings claims. Â Specifically,
he argued that the DepartmentÂs requirement that he undertake rezoning of the
property and its refusal to approve the permit application operated as a
regulatory taking.Â  The United States Constitution
prohibits the taking of private property without just compensation. Â U.S.
Const. amends. V, XIV.Â  Article I,
Section 17, of the Texas Constitution provides that Â[n]o personÂs property
shall be taken, damaged or destroyed for or applied to public use without
adequate compensation being made, unless by the consent of such person.ÂÂ  Tex.
Const. art. I, Â§ 17.Â  Abbott makes
no argument that the CityÂs actions constituted a total taking of his property,
but, rather, that the actions unreasonably interfered with his right to use and
enjoy the property Âto the extent that it has had a severe economic impact
which interferes with [his] distinct investment-backed expectations.ÂÂ  This type of claim is referred to as a ÂPenn
CentralÂ takings claim and arises when a governmental entity has denied a
landowner approval to develop his property.Â 
City of Carrollton v. HEB Parkway
S., Ltd., 317 S.W.3d 787, 793
(Tex. App.ÂFort Worth 2010, no pet.) (citing Penn Cent. Transp. Co. v. City of N.Y., 438 U.S. 104, 124 (1978)). 

Â Â Â Â Â Â Â Â Â Â Â  The Âripeness doctrineÂ involves the
issue of jurisdiction of the subject matter and power to render a particular
relief. Â Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998); Williamson County RegÂl Planning CommÂn v.
Hamilton Bank of Johnson City, 473 U.S. 172, 200 (1985).Â  A controversy is ÂripeÂ for the courts when
it has Âlegally matured.ÂÂ  The ripeness
doctrine is to prevent the courts, by avoidance of premature adjudication, from
entangling themselves in abstract disagreements over administrative policies,
and also to protect the agencies from judicial interference until an
administrative decision has been formalized and its effects felt in a concrete
way by the challenging parties.Â  Abbott Labs. v. Gardner, 387 U.S. 136 (1967),
overruled on other grounds by Califano v.
Sanders, 430 U.S. 99, 105 (1977).Â  

Â Â Â Â Â Â Â Â Â Â Â  An administrative action must be
final before it is judicially reviewable. Â Williamson,
473 U.S. 172. Â The finality requirement
is concerned with whether the initial decision maker has arrived at a
definitive position on the issue that inflicts an actual, concrete injury.Â  ÂThere can be no ÂtakingÂ by eminent domain
until this condition is complied with. Â The
burden of establishing jurisdiction, of proving a justiciable controversy,
clearly falls on the moving party.Â Â City of ElÂ Paso v. Madero Dev., 803
S.W.2d 396, 400 (Tex. App.ÂEl Paso 1991, writ denied).Â  ÂA Âfinal decisionÂ usually requires both a
rejected development plan and the denial of a variance from the controlling
regulations.ÂÂ  Mayhew, 964 S.W.2d at 929 (citing Williamson, 473 U.S. at 187Â88). Â ÂThe same Âfinal decisionÂ requirement applies
to determine the ripeness of as-applied due process and equal protection
challenges to a land-use decision.ÂÂ  Id. at 930. 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â Â  Federal Takings Claim Is Not Ripe

Â Â Â Â Â Â Â Â Â Â Â  The Just Compensation Clause applies
to the states by operation of the Fourteenth Amendment. Â Mayhew,
964 S.W.2d at 933. Â However, a Âfederal
[takings] claim is not ripe until state court proceedings have been concluded.Â
Â Hallco
Tex., Inc. v. McMullen County, 221 S.W.3d 50, 59 (Tex. 2006); see City of Houston v. Guthrie, 332
S.W.3d 578, 592 (Tex. App.ÂHouston [1st Dist.] 2009, pet. denied) (citing City of Dallas v. VRC L.L.C., 260 S.W.3d
60, 66 (Tex. App.ÂDallas 2008, no pet.); Williamson,
473 U.S. at 195 (1985) (Â[I]f a State provides an adequate procedure for
seeking just compensation, the property owner cannot claim a violation of the
Just Compensation Clause until it has used the procedure and been denied just
compensation.Â)); City of Dallas v.
Chicory Court Simpson Stuart, L.P.,
271 S.W.3d 412, 423Â24 (Tex. App.ÂDallas 2008, pet. denied).Â  Because state proceedings have not concluded,
AbbottÂs federal takings claims are not ripe. 

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â Â  State Takings Claim

Â Â Â Â Â Â Â Â Â Â Â  The City and Carruth point to a
United States Supreme Court case, MacDonald, Sommer & Frates v. Yolo County,[12] as guidance in analyzing
the State takings claims.Â  In that case,
the Court determined that rejection of a subdivision proposal by a county
planning commission could not be viewed as a final decision by a governmental
entity, rendering plaintiffÂs federal takings claim unripe.Â  MacDonald, Sommer & Frates v. Yolo County, 477
U.S. 340, 342 (1986).Â  The Court opined
that it would decline Âto reach the question whether the Constitution requires
a monetary remedy to redress some regulatory takings [where] the records . . . [leave
the Court] uncertain whether the property at issue had in fact been
taken.ÂÂ  Id. at 352.Â  In MacDonald, as here, there was Âthe
possibility that some development will be permitted.ÂÂ  Id. 

Â Â Â Â Â Â Â Â Â Â Â  Abbott relies on Mayhew to support his argument that his
claims are ripe for adjudication because the requirement of seeking rezoning or
a variance in this case would be futile. Â Mayhew was the first Texas Supreme Court
case applying the ripeness doctrine to land use regulations stemming from the
MayhewsÂ complaints that a refusal to approve a planned development constituted
a taking.Â  964 S.W.2d. at 928.Â  After reiterating that the concept of
ripeness requiring final decisions is usually signified by rejected development
plans and variance denials, the court highlighted the exception that Âfutile
variance requests or re-applications are not required,Â and ruled that the
MayhewsÂ variance request would have been futile, even though they failed to
apply for a variance. Â Mayhew, 964 S.W.2d at 929, 931.Â  The ruling, however, was limited to Âthe
circumstances of [that] case,Â which are dissimilar to ours.Â  Id. at
932.Â  

Â Â Â Â Â Â Â Â Â Â Â  In that case, the Mayhews owned
several hundred acres of land which they hoped to develop, but were confronted
by a Town of Sunnyvale ordinance prohibiting planned developments with
densities in excess of one dwelling unit per acre.Â  Id. at
926.Â  The Mayhews met with the Town, who
amended the ordinance to allow development in excess of the limit, with council
approval.Â  Id. Â After spending half a
million dollars for studies and the preparation of evaluative reports, the
Mayhews submitted their planned development proposal to the Town.Â  Id. Â If approved, the Mayhews planned to sell the
property to a third party for development.Â 
Id.Â  However, the third party would only develop
the property if it could build a minimum of 3,600 housing units.Â  Id. Â Thus, the Mayhews sought approval to build
3,650 to 5,025 units.Â  Id. Â After
four months of consideration, the TownÂs planning and zoning commission
recommended denial of the application.Â  Id. Â The Town council next appointed a negotiating
committee, which met with the Mayhews and agreed to a compromise development of
3,600 units, the minimum number of units needed for the third party to purchase
the property for development purposes.Â  Id.Â 
At a subsequent meeting of the Town council, the council was informed
that approval for less than 3,600 units would be considered an outright
denial.Â  Despite the prior compromise
with the negotiating committee, the council voted to deny the development.Â  Id. Â A meeting to reconsider the vote was later
cancelled by the Town.Â  Instead of
applying for a variance, the Mayhews filed suit.Â  Id.
at 931. 

Â Â Â Â Â Â Â Â Â Â Â  Mayhew
observed that Â[n]ormally, their failure to reapply or seek a variance would be
fatal to the ripeness of their claims.Â Â Id. (citing MacDonald, 477 U.S. at 351; Williamson,
473 U.S. at 188Â91).Â  However, because
the Âevidence in this case establishe[d] the extent to which the Mayhews worked
with the Town in attempting to have their development approvedÂ: Â spending $500,000.00, engaging in negotiations
with the Town for over a year, compromising with a negotiating committee after
an initial negative response from the TownÂs planning and zoning committee,
suffering a rejection of their amended development plan application, and
cancellation of reconsideration of the Town councilÂs vote, the court held that
a variance application would have been futile and that the MayhewsÂ claims were
ripe.Â  Id. at 931.Â  Importantly,
prior to their application denials, the Mayhews had worked to amend the
ordinance which worked to restrict their development plan.Â  

Â Â Â Â Â Â Â Â Â Â Â  In this case, Abbott consulted with
Carruth prior to receiving his letter, and after receiving a letter from the
Department in response to his preliminary plat advising him to seek rezoning,
Abbott addressed the city council during the ÂCitizens ForumÂ portion of the
meeting. Â Abbott then filed a permit
application.Â  After the permit was
denied, no further action was taken by him to alter the situation.Â  A denial of a permit application can be
appealed through procedures described in the CityÂs ordinances.Â  Instead of negotiation or use of such
procedures, Abbott filed suit to enforce his interpretations of the representations
in CarruthÂs letter. Â The lack of a final
opinion from the city council, failure to apply for rezoning or variance, and
lack of attempt at negotiation or compromise after the permit denial
distinguish this case from Mayhew and
lead us to conclude that the futility doctrine cannot be employed here.Â  See HEB
Parkway S., 317 S.W.3d at 798 (distinguishing Mayhew where there were no attempts to have the complained-of
ordinance amended or changed).Â  

Â Â Â Â Â Â Â Â Â Â Â  Instead, this case is more similar
to that in City of El Paso v. Madero
Development.Â  In that case, a
landowner filed a preliminary plat for phase one of his subdivision development
plan with the City Plan Commission.Â  803
S.W.2d at 398.Â  The landowner received
final approval subject to various conditions in 1982.Â  In 1985, the landowner was notified by letter
that there had been no activity on phase one of the subdivision, that an El
Paso city ordinance stated that failure to Âsubmit the recording plat within
one year from the date of the City Plan Commission approval of the final plat
shall terminate all proceedings unless an extension of a specified amount of
time is approved by the City Plan CommissionÂ and that Âthe subdivision file
was officially closed.ÂÂ  Id.Â  In
1986, the land was rezoned for ÂPlanned Mountain Development,Â which dictated a
more restrictive use than the previous zoning classification.Â  Id. Â Madero Development, the landowner, sued the
City of El Paso, alleging that a taking had occurred.Â  The trial court determined a taking as a matter
of law, and a jury awarded the landowner $871,200.00.Â  Concluding that the landownerÂs claim of
inverse condemnation by rezoning was not ripe because he failed to apply for a
variance to the zoning, the El Paso Court of Appeals reversed the trial courtÂs
judgment and dismissed the appeal for want of jurisdiction.Â  Id. at
399.Â  In doing so, Madero Development also specifically rejected the landownerÂs urged
application of the Âfutility doctrineÂ because the zoning board of adjustment
had authority to grant variances.Â  Id. at 400.Â  

Â Â Â Â Â Â Â Â Â Â Â  Our resolution of this issue is
guided by the function of the CityÂs different bodies, which explains the
reason why a final decision usually Ârequires both a rejected development plan
and the denial of a variance from the controlling regulations.ÂÂ  Mayhew,
964 S.W.2d at 929; Williamson, 473
U.S. at 187Â88 (holding that plaintiffsÂ claims were not ripe because while
plan was denied, no variance from zoning regulation preventing approval of plan
was sought).Â  Under the CityÂs ordinances,
the city council is responsible for enacting zoning ordinances.Â  Paris,
Tex., Zoning Ordinance 1710 Â§ 1-100 App. C (1957).Â  The planning commission is responsible for
more specific regulations governing the subdivision of land. Â Section 21-100 of the Paris Zoning Ordinance,
entitled ÂAmendmentsÂ allows any person having a proprietary interest in any
property to petition the planning and zoning commission for a change or
amendment to the provisions of the Zoning Ordinance.Â  Paris,
Tex., Zoning Ordinance 1710 Â§ 21-100 App. C (1957).Â  Once the petition is made, the city council
may amend, supplement, or change by ordinance the established boundaries of the
districts or the regulations, provided the matter is submitted to the planning
and zoning commission for its recommendation and report.Â  Paris,
Tex., Zoning Ordinance 1710 Â§Â§ 21-101, 21-102 App. C (1957). Â After compliance with procedure for public
hearing outlined in Sections 21-103Â21.105, the city council votes on the
proposed amendment. Paris, Tex., Zoning
Ordinance 1710 Â§Â§ 21-103Â21.105 App. C (1957).Â  The decision of the Paris city council may be
appealed to a board of adjustment, which may Âauthorize in specific cases a
variance from the terms of a zoning ordinance,Â under certain circumstances. Â Tex.
Loc. GovÂt Code Ann. Â§ 211.009(a)(3) (West 2008); Paris, Tex., Zoning Ordinance 1710 Â§
21-106 App. C (1957). 

Â Â Â Â Â Â Â Â Â Â Â  In a situation similar to this
(i.e., one in which a plaintiff did not seek resolution from the separate
governmental bodies), the court in Williamson
reasoned that Âin the face of respondentÂs refusal to follow the procedures for
requesting a variance, and its refusal to provide specific information about
the variances it would require, respondent hardly can maintain that the
CommissionÂs disapproval of the preliminary plat was equivalent to a final
decision that no variances would be granted.ÂÂ 
473 U.S. at 190.Â  In the absence
of an attempt demonstrating a final decision through use of administrative
procedures, and the fact that the pleadings negate the assertion of the futility
doctrine since no action was taken after the building permit was denied, we
conclude that AbbottÂs state takings claims were not ripe.

VI.Â Â Â Â Â Â  Trial Court Was Without Jurisdiction Over Due Process and
Equal Protection Claims

Â 

Â Â Â Â Â Â Â Â Â Â Â  ÂThe same Âfinal decisionÂ
requirement applies to determine the ripeness of as-applied due process and
equal protection challenges to a land-use decision.ÂÂ  Mayhew,
964 S.W.2d at 930.Â  For the reasons
stated above, we likewise conclude that AbbottÂs due process and equal
protection claims were not ripe.Â 
Moreover, a Âtrial court must grant a plea to the jurisdiction . . .
when the pleadings do not state a cause of action upon which the trial court
has jurisdiction.ÂÂ  Harris County v. Sykes, 136 S.W.3d 635, 639 (Tex. 2004). 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â Â  Due Process

Â 

Â Â Â Â Â Â Â Â Â Â Â  If an individual is deprived of a
property right, the government must afford an appropriate and meaningful
opportunity to be heard consistent with the requirements of procedural due
process.Â  Perry v. Del Rio, 67 S.W.3d 85, 92 (Tex. 2001); Mayhew, 964 S.W.2d at 939.Â  Accordingly, a plaintiff alleging a
procedural due process takings claim must establish that he was deprived of
notice and an opportunity to be heard with respect to a decision affecting his
property rights.Â  Mayhew, 964 S.W.2d at 939.Â  Abbott
claims that he was Âdeprived of notice and a meaningful opportunity to be heard
with respect to decisions affecting his property rights.ÂÂ  Although the City ordinances provided
procedures for appeal and opportunity to be heard on the matter, Abbott did not
avail himself of these procedures.Â 
Therefore, we find that Abbott cannot now assert a procedural due
process takings claim. 

Â Â Â Â Â Â Â Â Â Â Â  Abbott also claims that he was
denied substantive due process because the denial of the permit was arbitrary
and that the denial had no relation to the public health, morals, safety, or
welfare.Â  The permit denial, according to
the letter, was based in part upon the failure to rezone the property.Â  Abbott does not assert that the zoning laws
have no relation to the public health, morals, safety, or welfare.Â  Because the permit denial was based upon the
unchallenged zoning laws, AbbottÂs petition establishes that the denial was not
arbitrary. 

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â Â  Equal
Protection

Â 

Â Â Â Â Â Â Â Â Â Â Â  The Equal Protection Clause directs
governmental actors to treat all similarly situated persons alike.Â  Sanders
v. Palunsky, 36 S.W.3d 222, 224Â25 (Tex. App.ÂHouston [14th Dist.] 2001, no
pet.) (citing City of Cleburne v.
Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).Â  Where neither a suspect classification nor a
fundamental right is involved, the challenged law survives constitutional
scrutiny if it is rationally related to a legitimate governmental purpose. Â See
Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450, 457Â58 (1988).Â  But, if the plaintiffÂs constitutional claim
is facially invalid, the trial court must grant a political subdivisionÂs plea
to the jurisdiction asserting governmental immunity. Â See City
of Dallas v. Jones, 331 S.W.3d 781, 787 (Tex. App.ÂDallas 2010, pet.
dismÂd).Â  Thus, if the plaintiff fails to
plead a viable claim, a governmental defendant remains immune from a suit for
alleged equal protection violations.Â  See Andrade
v. NAACP of Austin, 345 S.W.3d 1, 6 (Tex. 2011).Â  To assert an equal-protection claim, Â[i]t is
critical . . . that the plaintiff allege he is being treated differently from
those whose situation is directly comparable in all material respects.Â Â Jones,
331 S.W.3d at 787. Â An equal protection claim may be asserted
by a plaintiff as a Âclass of oneÂ if he alleges that he has been intentionally
treated differently from others similarly situated and there is no rational
basis for the difference in treatment.Â  Id. (citing Leonard v. Abbott, 171 S.W.3d 451, 458 (Tex. App.ÂAustin 2005, pet.
denied)).

Â Â Â Â Â Â Â Â Â Â Â  AbbottÂs pleadings invoking
the equal protection clause assert that the refusal of the City to allow him to
develop his property in accord with the representations he maintains were
contained in CarruthÂs letter, Âinasmuch
as DefendantsÂ conduct was not rationally related to a legitimate state
interest and unfairly discriminates against the Plaintiff.ÂÂ  The purpose of the equal protection clause is
to secure persons against intentional and arbitrary discrimination. Â Id. Â It is critical that the plaintiff allege he is
being treated differently from those whose situation is directly comparable in
all material respects.Â  Id. Â Although he claims he was Âdiscriminate[d]
against,Â Abbott has failed to allege facts that he was similarly situated with
others and was treated differently.[13]Â  

VII.Â Â Â Â  Conclusion 

Â 

Â Â Â Â Â Â Â Â Â Â Â  The trial court lacked
subject-matter jurisdiction over AbbottÂs claims. 

Â Â Â Â Â Â Â Â Â Â Â  We reverse the trial courtÂs
judgment denying the CityÂs pleas to the jurisdiction and render judgment
dismissing AbbottÂs claims.

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Bailey
C. Moseley

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date
Submitted:Â Â Â Â Â Â Â Â Â  October 4, 2011

Date
Decided: Â Â Â Â Â Â Â Â Â Â Â  October
21, 2011

Â 











[1]Abbott
did not complain about the grant of the plea with respect to the Texas Tort
Claims Act Âcause of action.Â 

Â 





[2]Although
the pleadings are unclear as to whether Abbott included Carruth in the suit in
his individual capacity, his position that CarruthÂs actions were such that
they bound the City as a contract, one assumes that Abbott alleges that Carruth
acted in his official capacity and not personally. Â A suit against a government employee in his
official capacity is a suit against his government employer, and an employee
sued in his official capacity has the same governmental immunity,
derivatively, as his government employer. Â Franka v. Velasquez, 332 S.W.3d 367, 382Â83 (Tex. 2011).Â 
Accordingly, references hereafter are made solely to the City and not to the
City and Carruth. 





[3]AbbottÂs
petition states that Âthe City Council ratified the CityÂs position as
articulated in the City ManagerÂs Letter by its action and statements at the
City Council Meeting on March 8, 2010.Â 
At said meeting, the City Council tabled the consideration of a
multi-family housing ordinance that would have affected PlaintiffÂs mobile home
park expansion plans for the Property.Â 
City Council member Steve Brown specifically mentioned that doing so
would permit Plaintiff to move forward with his expansion.Â 





[4]The
petition also sought attorneyÂs fees under the Uniform Declaratory Judgments
Act (Tex. Civ. Prac. & Rem. Code
Ann. Â§Â§ 37.001Â.011 (West 2008), and prejudgment interest. 





[5]If
the pleadings are insufficient to establish jurisdiction, but do not
affirmatively demonstrate an incurable defect, the plaintiff should be afforded
the opportunity to replead. Â Holland, 221 S.W.3d at 643.





[6]Pursuant
to Tex. R. Evid. 204, we take
judicial notice of the ordinances of the City of Paris, Texas, as the same are
published at http://library.municode.com/index.aspx?clientID=11784&stateD=43
&statename=Texas.





[7]This
additional step is critical because judicial review of the decision made by a
board of adjustment is further limited by Section 211.011 of the Texas Local
Government Code.Â  Tex. Loc. GovÂt Code Ann. Â§ 211.011 (West 2008).





[8]The
StateÂs immunity is referred to as sovereign immunity, while that of political
subdivisions of the State is referred to as governmental immunity. Â Reata
Constr. Corp. v. City of Dallas, 197 S.W.3d 371, 374 (Tex. 2006). Â For ease of reference, we will generally use
the term Âgovernmental immunity.Â

Â 





[9]The
references to ÂimmunityÂ to which we will be referring are immunity from suit,
unless otherwise stated.





[10]The
waiver by conduct argument is generally asserted where the governmental entity
accepts some benefit under the contract. 





[11]For
a general opinion on authority to contract, see City of Bonham v. Sw. Sanitation, Inc., 871 S.W.2d 765 (Tex.
App.ÂÂTexarkana 1994, writ denied).Â  See City of Oakridge N. v. Mendes, 339
S.W.3d 222 (Tex. App.ÂÂBeaumont 2011, no pet.) (reversing trial courtÂs denial
of plea to jurisdiction because plaintiffÂs claims not founded upon properly
executed contract); Housing Auth. of City
of Dallas v. Killingsworth, 331 S.W.3d 806, 812 (Tex. App.ÂÂDallas 2011,
pet. denied) (authority to contract
must be present for waiver of governmental immunity under Chapter 271).Â Â  





[12]In
analyzing the ripeness of a challenge to a land use regulation under the Texas
constitution, we apply federal jurisprudence.Â 
HEB Parkway S., 317 S.W.3d at
794 (citing Mayhew, 964 S.W.2d at
928Â29).





[13]Further,
the petition cannot be amended to include this essential allegation with
respect to equal protection claims, as no facts demonstrating an equal
protection cause of action have been otherwise asserted or argued.Â