Argued and submitted March 3, order granting partial summary judgment for plaintiff reversed and remanded October 12, 2005, petition for review denied March 21, 2006 (340 Or 308)

John P. HAMMER,
on behalf of himself and all others similarly situated,
*Respondent,*

*v.*

CITY OF EUGENE,
a political subdivision of the State of Oregon,
*Appellant.*

16-00-12795; A122564

121 P3d 693

William F. Gary argued the cause for appellant. On the briefs were Jens Schmidt and Harrang Long Gary Rudnick, P.C.; on the reply brief was Karla Alderman.

Donald Joe Willis argued the cause for respondent. With him on the brief were Michael T. Garone, Jill S. Gelineau, and Schwabe, Williamson & Wyatt, P.C.

David J. Hunnicutt, Oregonians in Action, and Meriem L. Hubbard, Pacific Legal Foundation, filed the joint brief *amicus curiae* for Pacific Legal Foundation.

Before Haselton, Presiding Judge, and Linder* and Rosenblum,** Judges.

---

\* Linder, J., *vice* Richardson, S. J.

\*\* Rosenblum, J., *vice* Ortega, J.

ROSENBLUM, J.

**ROSENBLUM, J.**

This is an interlocutory appeal in a class action against the City of Eugene (the city) for inverse condemnation. The city exacted real property interests from the class members as a condition to granting their applications to partition land.[1] Plaintiff, the class representative, argued before the trial court that the class members are entitled to just compensation under the Takings Clause of the Fifth Amendment to the United States Constitution because the city did not make findings showing that the exactions and the impact of the developments proposed in the applications were "roughly proportional" in accordance with the test set forth in *Dolan v. City of Tigard*, 512 US 374, 114 S Ct 2309, 129 L Ed 2d 304 (1994). The city conceded that it had not made the findings when it conditionally approved the applications, but it sought to demonstrate "rough proportionality" at trial. The trial court granted partial summary judgment for plaintiff on the issue of liability, ruling that the city was required to make the "*Dolan* findings" at the time that it made the exactions. On the city's motion, the court certified for immediate appeal the issue whether the city may prove rough proportionality at trial. *See* ORS 19.225. We answer the question in the affirmative, and we reverse.

The pertinent facts in this case are undisputed. Plaintiff owned a single 3.32 acre parcel of land in Eugene. In December 1996, he applied to the city to partition the land into three parcels. The city's planning director approved the application subject to certain conditions, three of which required plaintiff to convey to the city either title to or an easement on portions of the property. Plaintiff complied with the conditions without objection, and the city gave final approval of the partition in 1998. In June 2000, plaintiff brought this action, seeking just compensation in the amount

---

[1] The trial court certified the case as a class action, identifying the class as approximately 173 landowners who applied to the city for minor partitions of property on or after June 24, 1994, and whose partitions the city approved on the condition that they convey real property interests to the city. Eugene Code section 9.0500 defines "partition" as a division of one parcel into two or three parcels. A minor partition is one that does not involve the creation of a public street.

of $2,401.35, the alleged fair market value of the property conveyed, plus interest from the date of the conveyance.

Before we recite the parties' arguments, a brief overview of the legal principles underlying this case is helpful. The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." That guarantee was "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 US 40, 49, 80 S Ct 1563, 4 L Ed 2d 1554 (1960). For example, if the government constructs a highway for use by the general public, it would be unfair to construct it on privately owned property without paying the owner just compensation for the affected property, because the benefit would inure to the general public, whereas the burden would rest solely on the landowner.

██ Conversely, when a landowner proposes to develop private property in a way that would create a burden on a public interest, the government generally may, by exercise of the police power, prohibit the development. *Nollan v. California Coastal Comm'n*, 483 US 825, 834-36, 107 S Ct 3141, 97 L Ed 2d 677 (1987). Such a prohibition constitutes a valid "land-use regulation [that] does not effect a taking if it * * * does not 'den[y]' an owner economically viable use of his land.'" *Id.* at 834 (quoting *Agins v. City of Tiburon*, 447 US 255, 260, 100 S Ct 2138, 65 L Ed 2d 106 (1980)). As an alternative to outright prohibition, the government may, in its discretion, protect the public interest at risk by conditioning approval of the development on some concession by the landowner—such as a concession of property interests—that mitigates the public burden that would otherwise justify prohibiting the development. As the Supreme Court explained in *Nollan*,

> "a permit condition that serves the same legitimate police-power purpose as a refusal to issue the permit [is not] a taking if the refusal to issue the permit would not constitute a taking. * * * If a prohibition designed to accomplish [a particular] purpose would be a legitimate exercise of the police power rather than a taking, it would be strange to conclude

that providing the owner an alternative to that prohibition which accomplishes the same purpose is not."

483 US at 836-37.

■      To determine whether an exaction exceeds the government's power to take private property for public benefit, courts must apply the two-pronged test that the Supreme Court developed in *Nollan* and *Dolan*. The first prong concerns simply whether the exaction and prohibition share a common purpose, or, in the Supreme Court's words, whether they have an "essential nexus." *Nollan*, 483 US at 837.

■      The second prong requires that the exaction and the projected impact of the proposed development be similar in magnitude. The Supreme Court explained the requirement in *Dolan*:

> "We think that a term such as 'rough proportionality' best encapsulates what we hold to be the requirement of the Fifth Amendment. No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development."

512 US at 391. In short, where a conveyance of property interests that is required by the government as a condition to approval of a development application—that is, an exaction—furthers the same end that would justify prohibiting the proposed development and is roughly proportional to its projected impact, the conveyance is not a taking and the landowner is not entitled to compensation.

Because *Dolan* is central to the parties' arguments, it is important to note ways in which it differs from the case before us. In *Dolan*, the planning commission for the City of Tigard approved the landowner's building permit subject to the condition that she convey portions of the affected property to the city, but, unlike here, it supported its decision with findings that it had made in advance concerning the relationship between the condition and the projected impacts of the landowner's proposed project. 512 US at 379-81. Thus, the timing of those findings was not before the Court in *Dolan*. Additionally, *Dolan* was not an inverse condemnation action,

but an administrative land use proceeding. The landowner did not accept the conditions and later institute an action for just compensation, as plaintiff did here. Instead, she appealed the planning commission's decision administratively. She initially sought a variance from the conditions, which the planning commission denied. After the Tigard City Council approved the commission's final order, she appealed the decision to the Land Use Board of Appeals (LUBA). *Id.* at 382. There, she argued that the conditions were unconstitutional because they constituted an uncompensated taking under the Fifth Amendment. She requested that LUBA either "reverse the city's imposition of th[e] condition or remand the decision to the city with instructions to remove the condition." *Dolan v. City of Tigard*, 22 Or LUBA 617, 621 (1992). Thus, unlike here, in *Dolan*, no property interests had been conveyed.

■    With those differences in mind, we turn to the parties' arguments. The city contends that the trial court effectively ruled that the absence of *findings* demonstrating rough proportionality at the time that property interests are conveyed in and of itself establishes an unconstitutional taking. According to the city, under *Dolan*, an unconstitutional taking occurs only in the absence of rough proportionality itself. The city argues that, when a property owner brings an action for inverse condemnation after the government has conditionally approved a development proposal, neither *Dolan* nor the Takings Clause precludes the government from demonstrating, after the fact, that rough proportionality existed at the time of the exaction. The city's position is that, when a claimant forgoes the administrative appeal process, the government should be able to present the same evidence of rough proportionality to the trial court in an inverse condemnation action that it would have been permitted to present to the hearings officer in an administrative appeal.

In his response, plaintiff agrees with the city's characterization of the effect of the trial court's ruling. Plaintiff asserts that the Supreme Court held in *Dolan* that the government has an affirmative burden to make findings of rough proportionality in support of an exaction *before* it takes title to the property. He contends that, when a governmental entity has not met that burden, it violates the Takings

Clause because "it has taken the applicant's property without the payment of just compensation." Plaintiff thus argues that the Supreme Court intended for the rough proportionality rule to be prophylactic—in other words, that the rule is meant to prevent the government from exacting property without justification.[2] Plaintiff acknowledges that the precise issue involved in this case was not before the Court in *Dolan*. He contends, however, that a close reading of the Court's opinion reveals that it intended to create a prophylactic rule to be applied when property interests have in fact been conveyed. Plaintiff relies on statements in the Court's opinion such as, "The question for us is whether *these findings* are constitutionally sufficient to justify the conditions imposed by the city on petitioner's building permit." *Dolan*, 512 US at 389 (plaintiff's emphasis).[3] Plaintiff argues, in essence, that the Supreme Court recognized in *Dolan* that the government has a constitutional duty to make rough proportionality findings before it imposes an exaction.[4]

We disagree both with plaintiff's assertion that the Supreme Court created a prophylactic rule in *Dolan* and with the underlying premise that the Takings Clause requires

---

[2] In portions of his argument, plaintiff appears to urge this court to adopt the prophylactic rule that he advances even if it is not required by *Dolan* or the Takings Clause. If that is indeed plaintiff's intent, we decline to do so. Whether such a rule is desirable is the sort of policy issue that is best addressed to the legislature.

[3] Plaintiff also argues that the following passages in *Dolan*, among others, indicate that the Court intended to create a prophylactic rule: "No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." 512 US at 391. "In this situation, the burden properly rests on the city." *Id.* at 391 n 8. "We conclude that the findings upon which the city relies do not show the required reasonable relationship between the floodplain easement and the petitioner's proposed new building." *Id.* at 394-95. "[T]he city has not met its burden of demonstrating that the additional number of vehicle and bicycle trips generated by petitioner's development reasonably relate to the city's requirement for a dedication of the pedestrian/bicycle pathway easement." *Id.* at 395. "No precise mathematical calculation is required, but the city must make some effort to quantify its findings in support of the dedication * * *." *Id.* at 395-96.

[4] Plaintiff also contends that, if we hold that the city may attempt to demonstrate rough proportionality at trial, just compensation is due for a temporary taking because the city has held title to his property since the partition was finalized. That issue is not properly before us in this interlocutory appeal, and we do not consider it. Plaintiff also raises other arguments that we reject on the merits without discussion.

such a rule. Plaintiff's argument that the Court affirmatively created the prophylactic rule that he urges us to apply here requires little discussion. The Court's opinion in *Dolan* does not support plaintiff's assertion. The Court's references to "these findings"—that is, the findings made by the City of Tigard—and its holding that "the findings upon which the city relies [did] not show the required reasonable relationship," *id.* at 394-95, simply reflect the procedural posture of the case. Given that the City of Tigard had made findings and that the only issue before the Supreme Court was whether those findings were sufficient, it makes sense that the Court used the terms that it did. We cannot conclude that the Court intended to create a rule with such profound consequences merely by implication and in a case in which the rule had no application.

We also reject plaintiff's underlying premise that the Takings Clause itself compels the government to make rough proportionality findings at the time that it imposes an exaction on a development application. Plaintiff effectively reads a procedural requirement into the Takings Clause. That reading conflicts with the text and structure of the constitution and with other Supreme Court decisions.

■ Three clauses in the constitution address private property rights: the Takings Clause, the Fifth Amendment's Due Process Clause, and the Fourteenth Amendment's Due Process Clause. If the framers had intended for the Takings Clause to include a procedural requirement, there would have been no need to prohibit deprivations of property "without due process of law." *Cf. Hurtado v. California*, 110 US 516, 534-35, 4 S Ct 111, 28 L Ed 232 (1884) (stating that the Fifth Amendment's Indictment Clause would be superfluous if the Due Process Clause were construed to include the indictment requirement, and stating, "[W]e are forbidden to assume, without clear reason to the contrary, that any part of this most important amendment is superfluous."). The presence of those due process clauses, and their explicit application to property deprivation, indicates that the Takings Clause is concerned not with process, but rather with substantive restrictions on government authority. *Cf. Brown v. Legal Foundation of Wash.*, 538 US 216, 231-32, 123 S Ct 1406, 155 L Ed 2d 376 (2003) ("While it confirms the State's

authority to confiscate private property, the text of the Fifth Amendment imposes two conditions on the exercise of such authority: the taking must be for a 'public use' and 'just compensation' must be paid to the owner."). Thus, plaintiff's argument that the government is required to follow particular procedures when imposing exactions sounds in due process, not in takings jurisprudence.

■     Other decisions of the Supreme Court support that conclusion. In *Williamson Planning Comm'n v. Hamilton Bank*, 473 US 172, 195 n 14, 105 S Ct 3108, 87 L Ed 2d 126 (1985), the Court noted that, unlike the Due Process Clause, the Takings Clause "has never been held to require pretaking process * * *."[5] In fact, were it otherwise, there would be no such thing as inverse condemnation as a substantive matter. *See, e.g., First Lutheran Church v. Los Angeles County*, 482 US 304, 316, 107 S Ct 2378, 96 L Ed 2d 250 (1987) ("While the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings."); *United States v. Clarke*, 445 US 253, 257, 100 S Ct 1127, 63 L Ed 2d 373 (1980) ("The phrase 'inverse condemnation' appears to be one that was coined simply as a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted."). But an inverse condemnation claimant cannot prevail merely by showing that the government failed to follow condemnation procedures; he or she must show that the government actually took property. *Cf. MacDonald, Sommer & Frates v. Yolo County*, 477 US 340, 348, 106 S Ct 2561, 91 L Ed 2d 285 (1986) ("[A]ppellant must establish that the regulation has in substance 'taken' his property * * *.").

---

[5] In a recent opinion, the Supreme Court further distinguished the Takings Clause from the Due Process Clause, holding that the Takings Clause does not encompass the requirements of substantive due process. In *Lingle v. Chevron U.S.A., Inc.*, 544 US 528, _____, 125 S Ct 2074, 2083, 161 L Ed 2d 876 (2005), the Court disavowed the "substantially advances legitimate state interests" test for regulatory takings, first articulated in *Agins*, as "prescrib[ing] an inquiry in the nature of a due process, not a takings, test [that] has no proper place in our takings jurisprudence."

The prophylactic rule that plaintiff proposes prescribes an inquiry in the nature of a due process test. It asks whether the government made *Dolan* findings before imposing an exaction. The answer to that question tells us nothing about whether an exaction effected a taking. If the government did make findings, that fact alone does not indicate whether the findings were adequate to justify the conclusion that the exaction did not effect a taking. Likewise, the bare fact that the government did *not* make findings says nothing about whether the burden imposed by an exaction is related in nature and extent to the impact of the development.

Plaintiff's proposed rule tells us nothing about whether justice requires compensation. In fact, in cases in which there is rough proportionality, the rule would saddle taxpayers with the burden of paying compensation that justice does not require. Only consideration of the nature and extent of an exaction and the impact of a proposed development, on their merits, can reveal whether the rough proportionality requirement is met. Thus, when, as in this case, a landowner first challenges an exaction in an inverse condemnation action, the government must be permitted to make its case that rough proportionality existed at the time of the exaction.

As to whether the Due Process Clause requires a rule such as the one that plaintiff proposes, that issue, whatever its merits, is not properly before us; plaintiff did not challenge the exaction in this case on due process grounds. *Cf. Lingle v. Chevron U.S.A., Inc.*, 544 US 528, ___, 125 S Ct 2074, 2087, 161 L Ed 2d 876 (2005) (Kennedy, J., concurring) (noting that the Court did not consider whether a challenged regulation's alleged failure to substantially advance a legitimate state interest violated the Due Process Clause, because the plaintiff had dismissed its due process claim).

In short, we conclude that neither *Dolan* nor the Takings Clause requires the prophylactic rule for which plaintiff argues. It follows that the trial court erred in concluding that the city may not attempt to demonstrate rough proportionality at trial.

Order granting partial summary judgment for plaintiff reversed and remanded.